IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES PERRY                                    *

      Plaintiff,                             *

vs.                                            *    Civil Action No.:
                                                    2:06-cv-00502-MEF
FLEETWOOD ENTERPRISES, INC.,                   *
FLEETWOOD HOMES OF GEORGIA,
INC., and Fictitious                           *
Defendants "A", "B", and "C",

      Defendants.                            *

## MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(6) AS PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW

COME NOW, the Defendants, Fleetwood Enterprises, Inc. and Fleetwood Homes of Georgia, Inc., (hereinafter "Fleetwood") and by and through undersigned counsel file this Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in the pending civil action. In support of said Motion, the Defendants assert as follows;

1.     The preemption doctrine has it roots in the Supremacy Clause, Article VI, Section 2 of the United States Constitution, which elevates federal law above that of the States. *See Gibbons v. Ogden,* 22 U.S. 1 (1824). Preemption may occur in three ways. First, federal law, either by statute or regulation, may expressly provide that it supplants state authority in a particular field. *See, e.g., Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947); *S. Blasting Svcs., Inc. v. Wilkes County,* 288 F.3d 584, 590 (4th Cir. 2002). Second, Congress may impliedly preempt state law when "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress

left no room for the States to supplement it." *Cipollone v.Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks and citations omitted). Third, even absent an express or implied federal intent to preempt state authority in a field, state law is preempted by operation of law to the extent that it actually conflicts with federal law, either because compliance with both is a "physical impossibility," or when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). To the extent that Plaintiff's claims are an attempt to complain about the manner in which Plaintiff's manufactured home was designed, assembled and/or manufactured, both express and implied preemption bar the claims.

2.    According to Plaintiff's complaint, Fleetwood built Plaintiff's manufactured home and various other similar homes. Plaintiff purchased his home on or about May 2, 2002. [Exhibit "A", Complaint, paragraphs 5, 44; Exhibit "B", Affidavit of Todd Uhlick]

3.    Pursuant to 42 USC §5401, et seq., known as the Manufactured Housing Construction and Safety Standards Act (MHCSSA or "the Act"), the manufactured housing industry is heavily regulated by federal law. Manufacturers are required to comply with the federal Manufactured Home Construction and Safety Standards ("Standards") promulgated by the U.S. Department of Housing and Urban Development ("HUD").

4.    The particular construction standard at issue, on information and belief, mandates that a manufacturer comply with one of three (3) options to construct exterior wall on manufactured homes.

5.     Fleetwood chose one of those three options and now Plaintiff contends that Fleetwood's choice constitutes a claim arising in tort and/or contract under Alabama law.

6.     State law claims attempting to impose liability on a manufacturer for complying with mandatory federal regulations are expressly and impliedly preempted.

7.     The express preemption clause applicable to manufactured housing requires that it be "broadly and liberally construed". 42 USC §5403(a)(4)

8.     The Act's implementing regulations also contain a "state enforcement clause" that prohibits courts from using state law to impose construction standards on manufacturers that are not identical to the federal standards. *infra* 24 CFR §3282.11

9.     The specific construction standard at issue is a "preemptive energy conservation standard" that preempts state law claims under a second express preemption clause applicable to manufactured housing. 42 USC §5403(g)(1)-(2)

10.     The Manufactured Home Construction and Safety Standards, 24 CFR §3280, et seq., and the Manufactured Home Procedural and Enforcement Regulations, 24 CFR §3282, et seq. are the regulations comprising the construction and safety standards authorized under the Act. These procedural and enforcement regulations set forth in Section 24 are commonly known as the "HUD Code".

11.     An examination of Title 24 shows that virtually every aspect of manufactured housing construction is regulated by the HUD Code. (e.g., §3282.11 precludes a State from setting standards of construction and safety that conflict with standards covered by these Federal standards.)

12.    The standard at issue in this case is in Section 3280, Subpart F—Thermal Protection, and sets forth "the requirements for condensation control, air infiltration, thermal insulation and certification for heating and comfort cooling." 24 CFR §3280.501 Thus, these standards in Subpart F are "preemptive energy conservation standards . . . [that] shall be cost-effective energy conservation performance standards designed to insure the lowest total of construction and operating costs." 42 USC §5403(g)(1)-(2)

13.    The specific method of construction of which plaintiffs complain that Fleetwood used is one of three condensation control options from which manufacturers are required to choose under Standard 3280.504. Compliance with this standard requires manufacturers such as Fleetwood to construct pursuant to one of these three options, regardless of geographic location.

14.    Plaintiff's claims are barred under the doctrine of "express preemption" as well as the doctrine of "implied preemption". *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992)

15.    Because the express preemption provision in the Act "shall be broadly and liberally construed" to avoid disparate State or local requirements or standards in order that they do not affect the uniformity and comprehensiveness of the standards or the Federal superintendence of the manufactured housing industry, 42 USC §5403(d), it is not necessary to invoke "implied preemption". *See Geier v American Honda Motor Co., Inc.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed. 2d 914 (2000), which described the preemptive effect that a "broad and liberal" construction would have on state law claims:

> Without the saving clause, a broad reading of the express pre-emption provision arguably might pre-empt those actions, for, as we have just mentioned, it is possible to read the pre-emption provision, standing alone, as applying to standards imposed in common-law tort actions, as well as

standards contained in state legislation or regulations. And if so, it would pre-empt all nonidentical state standards established in tort actions covering the same aspect of performance as an applicable federal standard, even if the federal standard merely established a minimum standard. **On that broad reading of the pre-emption clause little, if any, potential "liability at common law" would remain. And few, if any, state tort actions would remain for the saving clause to save.**

529 U.S. at 869, 120 S.Ct. 1918. (Emphasis added.)

16.     Because preemption under the Act "shall" be broadly construed, Plaintiff's claims are preempted on the grounds that they attempt to impose non-identical state standards through Alabama's tort, warranty, product liability, and contract laws by seeking to preclude or eliminate one of three methods of condensation control in wall construction specifically permitted by the federal standards. These three methods are not minimum standards, rather, Congress instructed the Secretary to establish construction and safety standards, "each of which . . . shall meet high standards of protection consistent with the purposes of [the Act][.] 42 USC §5403(a)(1) (A)(ii)

17.     While certain other manufactured housing standards have been designated as "minimums", the scope provision of "Subpart F—Thermal Protection" specifically states that §3280.504(b) is one of the "**requirements for condensation control,** air infiltration, thermal insulation and certification for heating and cooling". 24 CFR §3280.501 (emphasis added). These are energy conservation standards that are under the second express preemption clause contained in the Act:

> Federal manufactured home construction and safety standards established by the Secretary under this section shall include **preemptive** energy conservation standards ... [that] shall be cost-effective energy conservation performance standards designed to ensure the lowest total of construction and operating costs."

42 U.S.C. §5403(g)(1)-(2) (emphasis added).

18.     In *Geier, supra,* the Supreme Court stated that the savings clause "preserves those actions that seek to establish greater safety than the minimum safety achieved by **a federal regulation intended to provide a floor."** 529 U.S. at 870, 120 S.Ct. at 1919. But, the federal regulation regarding the placement of vapor barriers in external walls sets forth mandatory requirements, not minimum standards. The "high standards" of Subpart F are preemptive and the savings clause does not protect Plaintiff's claims from pre-emption.

19.     "Under the implied preemption doctrines of field preemption and conflict preemption, a state claim is preempted where 'Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme' or where 'state law conflicts with federal law or interferes with the achievement of federal objectives.'" *Witty v. Delta Air Lines, Inc.,* 366 F.2d 380, 384 (5th Cir. 2004) (Citation omitted). In addition to being expressly preempted, Plaintiff's claims are preempted under the doctrine of implied preemption, because the imposition of state standards would conflict with Federal law and interfere with Federal objectives, and there exists a comprehensive scheme of federal regulation of manufactured housing. *See Geier,* 529 U.S. at 867-868, 120 S.Ct. at 1918, (applying implied conflict preemption under the Motor Vehicle Safety Act (failure to install air bags) with a similar, but weaker (no mandate to be "broadly and liberally construed" provision)); *Irving v. Mazda Motor Corp.,* 136 F.3d 764 (11th Cir. 1998) cert. denied, 525 U.S. 1018, 119 S.Ct. 544, 142 L.Ed. 452 (1998); *Pokorny v. Ford Motor Co.,* 902 F. 2d. 1116 (3rd Cir. 1990), cert. denied, 498 U.S. 853, 11 S.Ct. 147, 112 L.Ed. 2d 113 (1990)[1] .

---

[1] Allowing Pokorny, and others in similar situations, to allege common law liability for the failure to install air bags or automatic safety belts would directly undermine the regulatory framework suggested by

20.    The Act and the HUD Code establish an extensive federal statutory and regulatory scheme controlling the construction of manufactured housing, particularly as it relates to safety and energy efficiency.    In addition, federal law regulates design approvals and in-plant inspections to assure compliance with these federal standards. It is abundantly clear that the federal government has occupied the field of manufactured housing construction and energy efficiency standards, thereby impliedly, if not expressly, preempting Plaintiff's state law claims under the field preemption doctrine.

21.    Pursuant to the 2000 amendments to the MHCSS Act, Congress interjected a consensus-based process for the proposal, revision, and implementation of performance standards. 42 U.S.C. §5403(a),(b). A consensus committee representing all materially affected interests was charged with gathering public comment towards proposing revisions to the manufacturing code. The Secretary followed this process in balancing the interests of manufacturers, retailers, and consumers in generating an alternative exterior wall construction method commonly known as the "Humid Climate Waiver". *Id.*

---

Congress in §1410b and implemented by the Department of Transportation in Standard 208. These aspects of Pokornny's common law action are preempted. *See Taylor,* 875 F.2d at 827 (Eleventh Circuit applied holding of *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 73 L. Ed.2d 664, 102 S. Ct. 3014 (1982), that **"a state common law rule cannot take away the flexibility provided by a federal regulation, and cannot prohibit the exercise of a federally granted option"**, since **Plaintiff's theory of recovery, based on manufacturers' failure to equip certain motor vehicles with air bags, effectively would remove the element of choice provided in Standard 208, Plaintiff's actions were impliedly preempted)[.]** (Further citations omitted; Emphasis added.) 902 F.2d at 1116. Simply put, state law claims are impliedly preempted (notwithstanding a savings clause) to the extent a ruling on the claim would hold a manufacturer liable for choosing a method of construction mandated or authorized by federal regulations. Additionally, failure-to-warn claims dependent on preempted defect claims are also preempted. These are precisely the types of claims advanced by plaintiffs in this case. Here, as in *Geier* and *Irving,* Fleetwood was given one of three federally mandated ways in to construct exterior walls in Plaintiff's home. Plaintiff, in effect, criticizes HUD's design and engineering principals by contending that Fleetwood is liable under state laws for complying with one of HUD-mandated options. All such claims are impliedly, if not expressly, preempted by the Act and the HUD Code.

22.    HUD's development of this permissive "waiver" of the HUD Code, effective April 24, 2002, provided a fourth alternative of the mandated construction standards in certain "Gulf Zone" counties with high humidity. The process for the implementation of this potential waiver, or fourth alternative, is perhaps the most tangible demonstration the extent of the control by federal regulation. See 24 CFR Part 3280, "Condensation Control for Exterior Walls of Manufactured Homes Sited in Humid and Fringe Climates; (hereinafter, "Humid Climate Waiver")[2]

23.    The Humid Climate Waiver was implemented in April 2002--after Plaintiff's home was manufactured—and after an almost decade long process to permit this additional alternative. The Humid Climate Waiver documents the extensive background, analysis, consensus-building, and evaluation of public comments and other information that the department went through in developing the final waiver addressing the very issues about which Plaintiff's complain. [Exhibit "B": Affidavit of date of manufacture]

24.    The fact that HUD has, through a deliberate, multi-year process, addressed the area of concern about which Plaintiff filed suit shows that federal law occupies this field, and that Plaintiff's state law claims are therefore preempted on this additional basis.

---

[2] Attached as Exhibit "C" are portions of the Federal Register containing pertinent excerpts addressing the potential additional "waiver" (or fourth) approved method of construction. This provision specifically references the State of Alabama and Bullock County, the county of Plaintiff's residence.

# CONCLUSION

Plaintiff's claims are expressly preempted by the Federal statutes and regulations applicable to manufactured housing because:

(1) they cannot survive the broad and liberal construction of preemption mandated under the Act's express preemption clause, 42 U.S.C. § 5403(d), or the limited enforcement of state laws permitted under 42 U.S.C. § 5422(a);

(2) the specific construction standard about which the plaintiff complains is a "preemptive energy conservation standard," 42 U.S.C. § 5403(g)(1)-(2); and;

(3) Plaintiff's attempt to impose state law liability upon Fleetwood for Fleetwood's construction of a series of homes using an approved mandated method of wall construction that Congress and HUD have specifically authorized is also impliedly preempted because it conflicts with the federal statutory and regulatory scheme, and because the United States Congress and HUD have occupied the field of safety and energy conservation standards for manufactured housing.

**WHEREFORE,** Fleetwood respectfully requests that this Honorable Court grant Fleetwood's Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) on the grounds stated herein.

DATED this 5th day of July, 2006.

/s/ David C. Hilyer
JAMES H. CROSBY (CROSJ7501)
WINSTON W. EDWARDS (137576)
DAVID C. HILYER (293823)
Attorneys for Defendants
Fleetwood Enterprises, Inc.
Fleetwood Homes of Georgia, Inc.

OF COUNSEL:
Crosby Saad, LLC
6404 Hillcrest Park Court
Mobile, Alabama 36695
Telephone:    251/476-3000
Facsimile:    251/776-5750
E-mail: jimcrosby@crosbysaad.com

Craddock Reneker & Davis, LLP
4142 Carmichael Road, Suite C
Montgomery, AL 36106-2802
Telephone:    334/215-3064
Facsimile:    334/215-7843
E-mail: wedwards@crdlawfirm.com
E-mail: dhilyer@crdlawfirm.com


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this <u>5th</u> day of <u>July</u>, 2006, served a true and correct copy of the above and foregoing, **Defendants, Fleetwood Enterprises, Inc.'s and Fleetwood Homes of Georgia Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. Proc. Rule 12(b)(6) as Plaintiff's Claims Are Preempted by Federal Law**, upon counsel of record in this proceeding by electronic service using the CM/ECF system and by placing the same in the United States Mail, properly addressed and first-class postage prepaid to the following parties:

C. Lance Gould, Esq.
Beasley, Allen, Crow, Methvin,
    Portis & Miles, P.C.
P.O. Box 4160
Montgomery, Alabama 36103-4160
Telephone:    (334) 269-2343
Facsimile:    (334) 223-1218
Email: lance.gould@beasleyallen.com


/s/ David C. Hilyer
OF COUNSEL