IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES PERRY, | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No.: |
| FLEETWOOD ENTERPRISES, INC., FLEETWOOD HOMES OF GEORGIA, | * | 2:06-cv-00502-MEF |
| INC., and Fictitious Defendants "A", "B", and "C", | * | |
| | * | |
| Defendants. | | |

## MOTION FOR LEAVE TO SUPPLEMENT BRIEF IN SUPPORT OF MOTION TO DISMISS WITH ORDER FROM UNITED STATES COURT FOR THE WESTERN DISTRICT OF LOUISIANA

Defendants Fleetwood Enterprises, Inc. and Fleetwood Homes of Georgia, Inc., (hereinafter "Fleetwood"), by and through their undersigned counsel, respectfully move this Court for leave to supplement their brief in support of their Motion to Dismiss with a recent decision from the United States District Court for the Western District of Louisiana on the following grounds:

On January 26, 2007, the United States District Court for the Western District of Louisiana granted the defendants' motion to dismiss in *Russell J. Guidroz, Jr. v. Champion Enterprises, Inc.* (W.D. La. Civil Action No. 05-1148). A copy of the decision is attached hereto as Exhibit A.

The issues in *Guidroz* are identical to the issues in this case. The *Guidroz* plaintiffs allege improper manufacture and/or design of their manufactured homes. The court held that the plaintiffs' claims were preempted by applicable federal statutes and

regulations. The court's reasons for dismissing the complaint mirror the arguments made by Fleetwood in its motion to dismiss in this case.

Obviously, the *Guidroz* decisions was not available at the time Fleetwood filed its brief in support of its motion to dismiss, and, therefore, Fleetwood now submits that this Court should consider the *Guidroz* decision in ruling on Fleetwood's motion to dismiss.

WHEREFORE, Fleetwood respectfully requests that the Court grant leave for Fleetwood to supplement its brief in support of its motion to dismiss.

DATED this 29th day of January, 2007.

Respectfully Submitted,

s/ David Walker
JAMES H. CROSBY (CRO026)
DAVID F. WALKER (WALKD2617)
WINSTON W. EDWARDS (EDW023)
DAVID C. HILYER (HIL051)
Attorneys for Defendants
Fleetwood Enterprises, Inc. and
Fleetwood Homes of Georgia, Inc.

OF COUNSEL:
Crosby Saad, LLC
6404 Hillcrest Park Court
Mobile, Alabama 36695
Telephone: 251/476-3000
Facsimile: 251/776-5750
E-mail: jimcrosby@crosbysaad.com
E-mail: dwalker@crosbysaad.com
E-mail: hsnow@crosbysadd.com

Craddock Reneker & Davis, LLP
4142 Carmichael Road, Suite C
Montgomery, AL 36106-2802
(334) 215-3064        Telephone
(334) 215-7843        Facsimile
E-mail: wedwards@crdlawfirm.com
E-mail: dhilyer@crdlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 29th day of January, 2007, served a true and correct copy of the above and foregoing instrument upon counsel of record in this proceeding by electronic service using the CM/ECF system and by placing the same in the United States Mail, properly addressed and first-class postage prepaid to the following party:

> C. Lance Gould, Esq.
> Beasley, Allen, Crow, Methvin,
>     Portis & Miles, P.C.
> P.O. Box 4160
> Montgomery, Alabama 36103-4160
> Telephone:    (334) 269-2343
> Facsimile:    (334) 223-1218
> Email: lance.gould@beasleyallen.com

> s/ David Walker
> DAVID F. WALKER

.

# EXHIBIT A

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

**RUSSELL J. GUIDROZ, JR., ET AL.**          ***CIVIL NO. 05-1148**

**VERSUS**                                    ***MAGISTRATE JUDGE HILL**

**CHAMPION ENTERPRISES, INC., ET AL.**        ***BY CONSENT OF THE PARTIES**

### REASONS FOR JUDGMENT

Pending before the court are the Rule 12(b)(6) Motions to Dismiss filed on behalf of

Redman Homes, Inc. ("Redman") and Champion Enterprises, Inc. ("Champion") [rec. docs. 8

and 9].  Plaintiffs, Russel J. Guidroz, Jr. and Michelle L. Guidroz ("Guidroz")[1], have filed

opposition.  [rec. doc. 15].

### Motion to Dismiss Standard

It is black-letter law that a motion to dismiss for failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6) is to be evaluated only on the pleadings.  *Mahone v. Addicks*

*Utility District of Harris County*, 836 F.2d 921, 935 (5th Cir. 1988).  In considering a motion to

dismiss for failure to state a claim under Rule 12(b)(6), the district court must accept all well-

pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*,

75 F.3d 190, 196 (5th Cir. 1996).  Moreover, a complaint should not be dismissed for failure to

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim that would entitle him to relief.  *Kaiser Aluminum & Chemical Sales v.*

---

[1]Plaintiffs assert individual claims and claims as the proposed representatives of a class of similarly situated persons. However, at this time, no class has been certified. The defect alleged by the named plaintiffs is alleged to be common to all persons in the proposed class. [*See* rec. doc. 1, ¶ 8, 9 and 29]. Accordingly, the instant ruling is applicable to all claims asserted herein, whether asserted individually or in a proposed representative capacity.

*Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir. 1982) citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

However, these principles are subject to limitations. Conclusory allegations and unwarranted deductions of fact are not accepted as true. *Id.* citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974). A complaint may be dismissed if it is clear on the face of the pleadings that an affirmative defense would be successful. *Id.* (citations omitted).

### Factual Background

_____Plaintiffs filed the instant action under the Louisiana Products Liability Act ("LPLA") and the Louisiana law of redhibition seeking rescission of the February 20, 1997 purchase of their mobile home, damages and attorney fees. Plaintiffs allege that their 1997 mobile home, designed and manufactured by Redman, has "an improper design and construction of exterior walls ... that incorporates [a] vapor barrier not greater than 1 perm (dry method) on the 'living side' of the wall structures for use in a Gulf Coast region state that is subject to hot and humid climactic conditions." [rec. doc. 1, ¶ 9]. Plaintiffs further allege that the "vapor barrier on the 'living side' of the wall structure is vinyl-coated sheetrock or other material" and that "this design and manufacture aspect does not comply with accepted engineering practices to insure durable, livable, and safe housing as set forth in HUD standards Title 24 of the Code of Federal

2

Regulations [§ 3280.303 and 3280.504(b)]."[2] *Id.* Use of this vapor barrier in the Gulf Coast

region has allegedly led "to excessive accumulation of vapor condensation and a continuous

moisture problem throughout the exterior wall structures of the mobile home[]" causing

deterioration of the wall materials and fungal growth throughout the wall structure. *Id.*

In the instant Motions, Redman and Champion claim that plaintiffs seek to impose

liability under Louisiana's redhibition and product liability laws for their *compliance* with a

mandatory federal safety and construction regulation, namely 24 C.F.R. § 3280.504(b). They

contend that plaintiffs claims are expressly and impliedly preempted by the Manufactured

Housing Construction and Safety Standards Act ("MHCSSA")[3], and the federal regulations

promulgated by the United States Department of Housing and Urban Development ("HUD")[4],

and accordingly that plaintiffs' Complaint should be dismissed for failing to state a claim upon

which relief may be granted pursuant to FRCP 12(b)(6).

_____More specifically, Redman and Champion contend that plaintiffs' claims are expressly

preempted by the MHCSSA general preemption clause set forth at § 5403(d), applicable to all

federal manufactured home construction and safety standards, and a second "energy

conservation standards" preemption clause set forth at § 5403(g)(1) and (2), applicable to the

specific construction standard at issue herein (24 C.F.R. § 3280.504(b)). Redman and

---

[2]In their Complaint, the plaintiffs mis-cited the applicable sections as "3208.303 and 3208.504(b)". The correct citations are inserted above in accordance with the plaintiff's recognition of this error in their opposition to the instant Motions. [*See* rec. doc. 15, p. 2 at fn. 2].

[3]42 U.S.C. § 5401, et. seq.

[4]24 C.F.R. 3280.1 et seq.

3

Champion argue that the MHCSSA general preemption clause, § 5403(d), when read in

conjunction with the MHCSSA "savings clause" (§ 5409(c)) and MHCSSA "state enforcement

clause" (§ 5422(a)), leads to the inescapable conclusion that compliance with the federal

standards does not preclude state law claims based on construction and safety issues

unregulated by the federal standards, but specifically precludes construction and safety issues

that are regulated by the federal standards to the extent that any standard not identical to the

federal standards is sought to be imposed.

Redman and Champion further argue that the standard at issue herein, § 3280.504(b), is

an "energy conservation standard" by virtue of its inclusion in Subpart F of the Code of Federal

Regulations addressing "Thermal Protection", and as such is subject to a second preemption

clause set forth at § 5403(g)(1) and (2), which designates "energy conservation standards" as

"preemptive." Redman and Champion additionally argue that express preemption is warranted

because the specific standard at issue herein, 24 C.F.R. § 3280.504(b), does not establish a

"minimum" standard, but rather constitutes a mandatory requirement, which, unlike a minimum

standard, does not permit liability for compliance with the standard on grounds that a higher

standard could have been employed.[5]

---

[5]Redman and Champion also contend that plaintiffs purported class action claims are expressly preempted
by the preemption clause set forth in the Code of Federal Regulations, § 3282.11. They argue that a favorable
decision on these claims would impose a state "system[] of enforcement of the Federal standards" which would
"impair[] the Federal superintendence of the manufactured home industry ..." contrary to the purposes and objectives
of Congress in enacting the MHCSSA. Rather, Redman and Champion assert that when a state law action challenges
a defect existing in a class of homes, as opposed to a defect in an individual home, the proper avenue of redress is to
propose an amendment to the standards in accordance with the standards review process, which review is done every
two years.

Plaintiffs respond that § 3280.11(c) expressly reserves their right to bring a class action lawsuit. They
argue that each claimant in the action is asserting an individual consumer complaint under Louisiana's consumer

Redman and Champion further contend that plaintiffs' claims are impliedly preempted because the claims conflict with manufacturing methods authorized by federal law and because federal statutes and regulations occupy the field of manufactured home construction. More specifically, they argue that under United States Supreme Court precedent, namely the Court's decision in *Geier American Honda Motor Company, Inc.*, 529 U.S. 861, 120 S.Ct. 1913 (2000), plaintiffs claims, which seek to impose liability for the defendants' exercise of a federally granted option explicitly authorized and permitted by federal regulation, conflicts with federal law and, is thusly conflict preempted. They argue that preemption is warranted because the specific standard at issue herein, 24 C.F.R. § 3280.504(b), does not establish a "minimum" standard, but rather gives manufacturers a choice of exterior wall construction that states are forbidden from precluding. Consequently, a favorable judgment for plaintiffs in this action would effectively eliminate a federally granted and federally authorized option via state court action, which would be inconsistent with federal law. They further argue that Congress and HUD have established an extensive federal statutory and regulatory scheme controlling the construction of manufactured homes, including the construction of the walls of those homes, thus preempting the field. They argue that the plaintiffs seek to impose a geographic restriction on the construction of exterior walls in homes situated in humid climates, a restriction which has been extensively debated, rejected, and only recently imposed by HUD. They cite the

---

protection laws as authorized by the regulation, and accordingly, that consideration of each individual consumer protection complaint in a class action setting will not result in a prohibited state "system for enforcement of the Federal standards."

    At this time, no class has been certified. Therefore, the undersigned will not reach these arguments.

Secretary's 2002 waiver of the § 3280.504(b)(1) requirement that vapor barriers be placed on

the "living side" of walls in homes situated in humid climates, and the ten year debate

preceding that amendment, as evidence of Congress' intent to occupy the field with respect to

the control of condensation in manufactured housing situated in humid climates, and the

placement of vapor barriers in those areas.

Plaintiffs, on the other hand, contend that their claims seek to impose liability on the

defendants under Louisiana's primary consumer protection laws, the LPLA and redhibition, for

Redman's and Champion's *violation* of the federal construction standard set forth at 24 C.F.R.

§ 3280.303(b) which requires that accepted engineering practices be employed in the

construction of mobile homes. They therefore assert that their claims are not expressly or

impliedly preempted.

More specifically, plaintiffs argue that no choice set forth in 24 C.F.R. § 3280.504(b) is

mandatory, but rather each choice is an "alternative." Therefore, they argue that

manufacturers, such as Redman and Champion, must chose an option that complies with

accepted engineering practices as required by § 3280.303(b), and their failure to do so may

subject the manufacturer to liability under state law. In sum, they argue that Redman and

Champion had a "regulatory duty to make the construction choice[] that complied with

accepted engineering practices to insure durable, liveable and safe housing as set forth in 24

C.F.R. § 3280.303." [*See* rec. doc. 15, p. 9]. However, given the humid Louisiana climate, the

defendants' choice did not comply with this standard. In support, plaintiffs cite the Secretary's

2002 waiver of the § 504(b)(1) requirements for construction of walls in mobile homes situated

in Louisiana, which was allegedly intended to avoid moisture and condensation damage like

those alleged by plaintiffs herein, as *prima facie* evidence that the defendants choice of wall

construction for homes in Louisiana did not comply with accepted engineering practices.

With respect to preemption, plaintiffs contend that the general preemption clause

§ 5403(d), when read in conjunction with the "savings clause" § 5409(c), provides for

preemption of state and local safety standards, but generally does not preempt state law causes

of action. They argue that courts have permitted state law actions, like the instant action,

which assert a failure to comply with the federal standards because such actions enforce those

standards without frustrating federal supervision of the manufactured housing industry. They

further argue that, contrary to the defendants' position, the jurisprudence interpreting these

seemingly contradictory statutes establishes that the "savings clause" does not exempt any

person from liability for compliance with the federal standards.

## Law and Analysis

### Preemption

Preemption can be express or implied. *Morales v. Transworld Airlines, Inc.*, 504 U.S.

374, 383, 112 S.Ct. 2031 (1992). The touchstone of every preemption issue is Congressional

intent. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608 (1992). When

regulations are promulgated under a congressional act, the regulation's preemptive reach

becomes a question of departmental intent. The opinion of the agency on whether or not its

regulations have preemptive effect is entitled to "some weight". *Geier v. American Honda*

7

*Motor Company, Inc.*, 529 U.S. 861, 883, 120 S.Ct. 1913, 1926 (2000). Express preemption

occurs when Congress declares within the four corners of the statute its intention to preempt

state laws. *English v. General Electric, Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270 (1990). In such

cases, courts "focus on the plain wording of the clause, which necessarily contains the best

evidence of Congress' preemptive intent." *CSX Transp. Inc. v. Easterwood*, 507 U.S. 658,

664, 113 S.Ct. 1732 (1993). Conversely, implied preemption occurs when an act's "structure

and purpose" suggest that Congress intended federal law to supersede state actions. *Jones v.

Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305 (1977). The Supreme Court has identified

two different categories of implied preemption. One category, called "field preemption," is

found where Congress legislates a field so completely that it is clear Congress intended the

federal government to have exclusive jurisdiction in that field. *English*, 496 U.S. at 79; *Witty

v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004). In such cases, Congressional intent

to preempt may be inferred from the existence of a "pervasive regulatory scheme." *Id*. The

second category of implied preemption is broadly referred to as "conflict preemption." *Id*.

Conflict preemption occurs when state action conflicts with federal law, by interfering with, or

standing as an obstacle to, the achievement of federal purposes and objectives as set out in the

statutes or regulations. *Id*.

**Statutory Provisions**

The stated purposes of the MHCSSA are: (1) to protect the quality, durability, safety,

and affordability of manufactured homes; (2) to facilitate the availability of affordable

manufactured homes and to increase homeownership; (3) to provide for the establishment of

practical, uniform, and, to the extent possible, performance-based Federal construction

standards for manufactured homes; (4) to encourage innovative and cost-effective construction

techniques for manufactured homes; (5) to protect residents of manufactured homes with

respect to personal injuries and property damages in manufactured housing, consistent with the

other purposes of this Act; (6) to establish a balanced consensus process for the development,

revision, and interpretation of Federal construction and safety standards for manufactured

homes and related regulations for the enforcement of such standards; (7) to ensure uniform and

effective enforcement of Federal construction and safety standards for manufactured homes;

and (8) to ensure that the public interest in, and need for, affordable manufactured housing is

duly considered in all determinations relating to the Federal standards and their enforcement.

42 U.S.C. § 5401.

To accomplish these purposes, the MHCSSA grants the Secretary of HUD authority to

establish appropriate Federal construction and safety standards for manufactured homes, which

standards are to be "performance based" and "reasonable and practical", while also meeting

"high standards of protection." 42 U.S.C.A. §§ 5403(a) and 5402(11). These standards are

published at 24 C.F.R. §§ 3280 et seq.

The MHCCA provides that the federal standards established by the Secretary of HUD

shall preempt, "with respect to any manufactured home covered, any standard regarding

construction or safety applicable to the same aspect of performance of such manufactured

home which is not identical to the Federal manufactured home construction and safety standard." 42 U.S.C.A. § 5403(d).

Enacted in December 2000, the American Homeownership and Economic Opportunity Act of 2000 amended 42 U.S.C.A. § 5403(d) to include a paragraph stating that: "Federal preemption under this subsection shall be broadly and liberally construed to ensure that disparate State or local requirements or standards do not affect the uniformity and comprehensiveness of the standards promulgated under this section nor the Federal superintendence of the manufactured housing industry as established by this chapter. Subject to section 5404 of this title, there is reserved to each State the right to establish standards for the stabilizing and support systems of manufactured homes sited within that State, and for the foundations on which manufactured homes sited within that State are installed, and the right to enforce compliance with such standards, except that such standards shall be consistent with the purposes of this title and shall be consistent with the design of the manufacturer." Pub.L. 106-569, Title VI, § 604, Dec. 27, 2000, 114 Stat. 2999. This amendment was to provide explicit statutory support for the HUD regulation at 24 C.F.R. § 3282.11 which interprets the preemptive effect of § 5403(d) of the Act, which was enacted in response to the 1998 Eleventh Circuit decision in *Georgia Manufactured Housing Ass'n., Inc. v. Spalding County, Ga.*, 148 F.3d 1304, 1309 fn. 8 (11th Cir. 1998), which raised a concern as to whether the regulation was valid because in the court's view that the regulation "seem[ed] to expand the scope of the unambiguous preemption provision enacted by Congress." 68 Fed. Reg. 42327, 42328 (July

10

17, 2003). "The amendment did not modify the basic substance of the statutory preemption

provision." *Id.*; *See also* 146 Cong. Rec. H11960, H11988 (Dec. 27, 2000) (Rep. Leach)

(noting that the revision to § 5403 would "clarify" the scope of federal preemption).

The HUD regulation which sets out the preemptive reach of § 5403(d) of the Act is set

forth at 24 C.F.R. § 3282.11. That regulation provides in pertinent part:

> (a) No State manufactured home standard regarding manufactured home
> construction and safety which covers aspects of the manufactured home governed
> by the Federal standards shall be established or continue in effect with respect to
> manufactured homes subject to the Federal standards and these regulations unless
> it is identical to the Federal standards.
> ...
> (c) States may participate in the enforcement of the Federal standards
> enforcement program under these regulations either as SAAs or PIAs or both.
> These regulations establish the exclusive system for enforcement of the Federal
> standards. No State may establish or keep in effect through a building code
> enforcement system or otherwise, procedures or requirements which constitute
> systems for enforcement of the Federal standards or of identical State standards
> which are outside the system established in these regulations or which go beyond
> this system to require remedial actions which are not required by the Act and
> these regulations. A State may establish or continue in force consumer
> protections, such as warranty or warranty performance requirements, which
> respond to individual consumer complaints and so do not constitute systems of
> enforcement of the Federal standards, regardless of whether the State qualifies as
> an SAA or PIA.
>
> (d) No State or locality may establish or enforce any rule or regulation or take
> any action that stands as an obstacle to the accomplishment and execution of the
> full purposes and objectives of Congress. The test of whether a State rule or
> action is valid or must give way is whether the State rule can be enforced or the
> action taken without impairing the Federal superintendence of the manufactured
> home industry as established by the Act.

Section 5403(g) requires that the manufactured home construction and safety standards

established by the Secretary include "preemptive energy conservation standards ... [which]

11

shall be cost-effective energy conservation performance standards designed to ensure the

lowest total of construction and operating costs ... [and] shall take into consideration the design

and factory construction techniques of manufactured homes and shall provide for alternative

practices that result in net estimated energy consumption equal to or less than the specified

standards." 42 U.S.C. § 5403(g).

The MHCCA also contains a "savings clause" which provides that "[c]ompliance with

any Federal manufactured home construction or safety standard ... does not exempt any person

from any liability under common law."[6] 42 U.S.C. § 5409(c).

The Act additionally contains a "state enforcement" statute which contains a clause

setting forth state court jurisdiction under state law as follows:

> Nothing in this chapter shall prevent any State agency or court from asserting
> jurisdiction under State law over any manufactured home construction or safety
> issue with respect to which no Federal manufactured home construction and
> safety standard has been established pursuant to the provisions of section 5403 of
> this title.

42 U.S.C. § 5422(a).

Several HUD regulations govern the construction of manufactured homes. Section

3280.303 sets forth "general requirements" for construction of the body and frame.

Subsection (b) of that section states that "[a]ll construction methods shall be in conformance

with accepted engineering practices to insure durable, livable, and safe housing ...." 24 C.F.R.

§ 3280.303(b). With respect to the construction of exterior walls, prior to May, 2006,

---

[6]While the "savings clause" refers to "common law", it is clear that it is meant to include state actions brought under state statutory law (the LPLA) and the Louisiana Civil Code, as is the case here.

§ 504(b) required manufacturers to use one of three methods of construction:

(1) Exterior walls must have a vapor retarder with a permeance no greater than 1 perm (dry cup method) installed on the living space side of the wall; or

(2) Unventilated wall cavities must have an external covering and/or sheathing that forms the pressure envelope. The covering and/or sheathing must have a combined permeance of not less than 5.0 perms. In the absence of test data, combined permeance is permitted to be computed using the following formula: $P \text{ total} = (1/[\ (1/P_1) + (1/P_2)\ ])$, where $P_1$ and $P_2$ are the permeance values of the exterior covering and sheathing in perms. Formed exterior siding applied in sections with joints not caulked or sealed, are not considered to restrict water vapor transmission; or

(3) Wall cavities must be constructed so that ventilation is provided to dissipate any condensation occurring in these cavities.

In February 1992, in connection with upgrading energy conservation requirements, HUD noted that manufactured homes were "being constructed with materials and construction systems that require more attention to the problem of dissipating moisture from within the home and from within the ceiling, wall and floor systems." 57 Fed. Reg. 6420, 6422 (Feb. 24, 1992). Accordingly, HUD proposed geographic restrictions on the construction of attic and roof cavities to permit that ceiling vapor retarders be omitted in the southern condensation zone, providing that certain ventilation requirements are met. *Id.* at 6423 and 6428. HUD additionally asked for comments on the continued use of ventilated walls and whether "the placement and location of vapor retarders in exterior walls [should] be related to the condensation zone in which it is located." *Id.* 6423.

In response to the proposed amendments, HUD received "varied [comments] from recommending no vapor retarder to advocating a vapor retarder in certain weather conditions ...

13

[however] no clear consensus seem[ed] to exist ...." 58 Fed. Reg. 54975, 54992 (Oct. 25, 1993). Noting that HUD "understands that the placement of a vapor retarder in one uniform location on all homes is desirable ...." *Id.* HUD nevertheless concluded that "a single location for the vapor retarder is not technically desirable." *Id.* Thus, stressing "the need for a vapor retarder that is a function of climate", and further noting that two major standards specified the placement of "a vapor retarder on the inside for cold climates and on the outside for warm climates", HUD determined that ceiling vapor retarders would be required in all but humid climates. *Id.* Accordingly, this new standard was adopted.

With respect to comments received regarding whether the placement of vapor retarders in exterior walls should be related to the condensation zone in which the home is located, HUD noted that many of the comments discussed, with respect to the placement of ceiling vapor retarders, also apply to the placement of vapor retarders in exterior walls. *Id.* at 54993. Moreover, as was the case with comments on the placement of ceiling retarders, "there [was] a wide range of views on the placement and need for a vapor retarder" in exterior walls. *Id.* After reviewing all of these comments, the Department did not propose a new standard in this area, and the Secretary therefore declined to make a decision on the issue, instead leaving the issue for future revisions of the regulations. *Id.*

In March 2000, acting on reports by manufacturers and southeastern states' administrative agencies which indicated an increase in the number and severity of consumer complaints caused primarily by moisture build-up and condensation in homes located in the

south after the implementation of the more stringent energy efficiency requirements, and noting

that the regulations (§ 3280.504) did not at that time distinguish between climates for

condensation control and installation of vapor retarders in the construction of exterior walls,

HUD proposed a waiver of the vapor barrier requirements set forth in § 3280.504(b)(1),

allowing manufacturers of homes in humid climates, at their option, to install the vapor retarder

on the exterior rather than the interior or "living space" side of the exterior wall, provided that

the interior wall was constructed of a permeable material meeting a certain permeability rating.

65 Fed.Reg. 17110-17112 (March 30, 2000).  The waiver was issued on April 24, 2002.  67

Fed. Reg. 20400-20403 (April 24, 2002).  In issuing the waiver, the Department noted that the

waiver constituted only a "partial solution" to the problem in that it did "not consider the larger

transport of moisture by air leakage" and accordingly, manufacturers choosing to use the

waiver, and thereby install the vapor barrier on the external side of the wall, were advised that

compliance with the waiver would not relieve them of their responsibility to use construction

methods that result in "durable, liveable, and safe housing" as required by § 3280.303(b).  *Id.*

at 20401.  In meeting that standard, it was suggested that manufacturers electing to use the

waiver consider the use of exterior air barriers, prevention of air leakage from duct systems and

other penetrations causing negative pressurization of the home, avoiding the use of oversized

cooling equipment and the use of balanced mechanical ventilation systems.  *Id.*

In December 2004, HUD proposed an amendment to § 504(b) to incorporate the

geographical waiver for homes situated in hot and humid climates.  69 Fed.Reg. 70016 (Dec. 1,

2004). Following public comment, however, HUD found that virtually no manufacturer had

been able to use the geographical waiver because it did not have necessary exceptions for the

interior wall permeability rating requirement in certain areas of the home. 70 Fed.Reg. 72024

(Nov. 30, 2005). Accordingly, HUD amended § 3280.504(b) to permit the placement of vapor

retarders on the exterior side of walls in homes manufactured to be sited in humid climates,

provided that the interior wall was constructed of a permeable material meeting a certain

permeability rating, except in areas such as the kitchen and bathroom, and where cabinetry or

trim are located. *Id*. The amended regulation became effective on May 30, 2006. *Id*.

## I. Plaintiff's claimed violation of § 3280.303(b)

The parties disagree on the federal standard which governs this action. Redman and

Champion contend that plaintiffs seek to impose liability under Louisiana's redhibition and

product liability laws for their compliance with 24 C.F.R. § 3280.504(b), which sets forth the

requirements for construction of exterior walls of manufactured homes. Plaintiffs, on the other

hand, contend that their claims seek to impose liability on the defendants for Redman's and

Champion's violation of § 3280.303(b) which requires that accepted engineering practices be

employed in the construction of mobile homes.

As noted above, § 3280.303(b) sets forth only "general requirements" for construction

of the body and frame of manufactured homes. The regulation is somewhat ambiguous

regarding the scope of its application as neither the terms "body" nor "frame" are defined in

Code. However, § 3280.504(b) is quite specific as to the scope of its application. The

16

regulation expressly sets forth the specific requirements for the construction of "[e]xterior

walls" of manufactured homes. Furthermore, the regulation is contained in that Subpart of the

Code which specifically deals with "condensation control." 24 C.F.R. § 3280.501.

It is a well known and well accepted canon of statutory construction that a specific

statutory provision controls over the general, and that "a general statutory rule does not govern

if a more specific rule covers the case." *Morales v. Transworld Airlines, Inc.*, 504 U.S. 374,

384, 112 S.Ct. 2031 (1992); *Resolution Trust Corp. v. Seale*, 13 F.3d 850, 854 (5th Cir. 1994);

*Carmona v. Andrews*, 357 F.3d 535, 538 (5th Cir. 2004) *citing United States v. John*, 309 F.3d

298, 302 fn. 5 (5th Cir. 2002), and *Kirby Corp. v. Pena*, 109 F.3d 258, 270 (5th Cir. 1997). The

same is true with federal regulations, "a general regulation ... is not controlling in the face of a

specific regulation ...." *Spreckels v. Helvering*, 315 U.S. 626, 628, 62 S.Ct. 777, 778 (1942);

*Brigham v. Eugene Water & Electric Bd.*, 357 F.3d 931, 940 fn. 17 (9th Cir. 2004); *Frysinger v.

Comm. of Internal Revenue*, 645 F.2d 523, 526-527 (5th Cir. 1981); *Jackson v. Noble Drilling

Corp.*, 1996 WL 291740, *2 (E.D.La. 1996). Moreover, "[h]owever inclusive may be the

general language of a statute, it 'will not be held to apply to a matter specifically dealt with in

another part of the same enactment.'" *Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102,

107, 64 S.Ct. 890 (1944); *Ehlmann v. Kaiser Foundation Health Plan*, 20 F.Supp.2d 1008,

1012 (N.D.Tex. 1998).

In this action, plaintiffs seek to impose liability on the defendants for the allegedly

defective construction of the exterior walls of their mobile home, which allegedly resulted in

17

an excessive accumulation of condensation throughout the exterior walls of their manufactured

home, causing deterioration of the exterior walls. However, the court concludes that

§3280.303(b), the general construction provision, is trumped by § 3280.504(b), the more

specific provision that applies to the construction of exterior walls of mobile homes and control

of condensation in those walls. Section 3280.504(b) is "tailor made for", and governs, the

facts of this case.

## II. Express Preemption

Redman and Champion argue that the MHCSSA general preemption clause, § 5403(d),

when read in conjunction with the MHCSSA "savings clause" (§ 5409(c)) and MHCSSA "state

enforcement clause" (§ 5422(a)), leads to the conclusion that plaintiffs' claims are expressly

preempted. In support, they rely on the Supreme Court's decision in *Geier* and a pre-*Geier*

1991 Texas state appellate court decision, *MacMillan v. Redman Homes*, 818 S.W.2d 87 (Tex.

Ct. App. 1991).

In *Geier*, the Court considered the effect of almost identical preemption and savings

clause provisions in the National Traffic and Motor Vehicle Safety Act ("NTMVSA") on a

state tort action. The Court found that "the savings clause assumes that there are some

significant number of common-law liability cases to save." *Geier*, 529 U.S. at 868. However,

the Court noted that if the express preemption clause was broadly read to apply to common law

actions and standards imposed by such actions, there would be little, if any, common law

liability remaining. *Id.* Thus, if Congress had intended little or no liability to remain, the Court

questioned why the Act would include a savings clause which would have had virtually no

meaning. *Id.* Consequently, the Court held that a broad reading of the express preemption

clause could not be correct, and in order to harmonize the two clauses, the Court held that

given the presence of the savings clause, the express preemption clause must be read narrowly

to expressly preempt only state statutes and regulations, not state common law private actions.

*Id.* Thus, the Court found that the plaintiffs' state law tort action was not expressly preempted.

*See also Sprietsma v. Mercury Marine*, 537 U.S. 51, 63-64, 123 S.Ct. 518 (2002) (interpreting

the Federal Boat Safety Act, containing both a preemption and savings clause, as expressly

preempting only "positive enactments" imposed by statute or regulation, not common law tort

actions).

Although the *Geier* Court reached a contrary result than that urged by Redman and

Champion here, they distinguish this result on grounds that the preemption clause at issue in

this case, unlike the clause at issue in *Geier*, expressly states that the clause must be "broadly

and liberally construed." Thus, they argue that the narrow construction of the clause afforded

by the *Geier* Court is inapplicable in this case. Affording the general preemption clause in the

MHCSSA broad and liberal construction, Redman and Champion assert that the clause applies

to standards imposed by common law tort actions. Consequently, they assert that plaintiffs'

claims are expressly preempted because the claims attempt to impose a state standard, via a

Louisiana state law tort action that is not identical to the federal standard.

However, as noted above, the amendment to § 5403(d) which added the "broad and

liberal" construction language to the preemption clause of the MHCSSA was to not intended to

modify or expand the basic substance, or reach, of the statutory preemption provision as

Redman and Champion suggest. Rather, this amendment was merely enacted in response to the

1998 Eleventh Circuit decision in *Georgia Manufactured Housing Ass'n., Inc. v. Spalding

County, Ga.*, 148 F.3d 1304, 1309 fn. 8 (11th Cir. 1998) to provide explicit statutory support for

the previously issued HUD regulation found at 24 C.F.R. § 3282.11. *See* 68 Fed. Reg. 42327,

42328 (July 17, 2003); *See also* 146 Cong. Rec. H11960, H11988 (Dec. 27, 2000) (Rep.

Leach) (noting that the revision to § 5403 would "clarify", not expand or modify, the scope of

federal preemption). Accordingly, the undersigned finds Redman's and Champion's argument

on this point unpersuasive.

Relying on *MacMillan*, Redman and Champion also argue that the state enforcement

clause mandates a result different than that reached by the *Geier* Court. While the NTMVSA

regulation at issue in *Geier* did not contain a similar provision, the undersigned nevertheless

concludes that this additional clause present in the MHCSSA does not lead to the conclusion

advocated by Redman and Champion. The *MacMillan* court reasoned that because § 5422(a)

expressly gives state courts jurisdiction over matters on which no federal standard has been

established, Congress intended that state courts would have no jurisdiction over matters on

which federal standards have been established. *MacMillan*, 818 S.W.2d at 92.[7] To adopt the

---

[7]To reconcile the savings clause and the state enforcement clause, the court interpreted the two provisions as allowing state court suits only on matters not covered by a specific federal standard, and that compliance with a federal standard covering other matters would not shield a defendant from liability in such suits. *See Id.* at 93. In other words, the court found that the two statutes reflect the difference between Congress withdrawing an entire field, or merely a part of that field, from the jurisdiction of the state courts by "eliminat[ing] any suggestion that federal regulation of certain aspects of safety in manufactured housing ... preempts the entire field of liability involving manufactured housing" safety issues. *Id.* In a pre-*Geier* decision, an Ohio court of appeals did not find the *Macmillan* interpretation of § 5422(a) persuasive, nor does the undersigned for those reasons set forth above. *See*

*MacMillan* reasoning urged by the defendants, however, would, in effect, "read-out" the plain

language of the savings clause and negate the interpretation of that clause made by the *Geier*

Court. The *Geier* Court found that the savings clause saves actions where a federal standard

has been established, and explained that compliance with that federal standard would not

automatically exempt a person from state law liability, citing as an example an action involving

a federal standard establishing only a "floor" or minimum requirement.[8] *Geier*, 529 U.S. at

867-868. Accordingly, the undersigned finds *MacMillan*'s interpretation of the state

enforcement clause neither persuasive nor controlling.

Finally, the undersigned notes that the state enforcement clause relates to jurisdiction in

a case where no federal standard exists. It does not speak to the case where, as here, a federal

standard has been issued. *See Mizner v. North River Homes, Inc.,* 913 S.W.2d 23, 25 fn.1

(Mo.Ct.App.E.D. 1995), *adopted and reinstated* (Mo.S.Ct. 2/5/96). Thus, this provision is

wholly inapplicable in this case. That conclusion is based on the explicit wording of the

regulation, and is further buttressed by the absence of reliance on the state enforcement clause

in any other decision concerning preemption of state law claims involving matters on which a

federal standard exists; rather, those courts uniformly only cite the general preemption clause

and savings clause in support of their decisions. *See e.g. Shorter v. Champion Home Builders*

*Co.,* 776 F.Supp. 333 (N.D.Ohio 1991); *Richard v. Fleetwood Enterprises, Inc.,* 4 F.Supp.2d

---

*Hall v. Fairmont Homes, Inc.*, 664 N.E.2d 546, 555-556 (Ohio App. 4th Dist. 1995).

[8]The Court explained that the words "compliance" and "does not exempt" were meant to bar a special kind of defense in such actions, "namely, a defense that compliance with a federal standard automatically exempts a defendant from state law ..." liability. *Geier*, 529 U.S. at 869.

650, 657 (E.D.Tex. 1998); *Turner v. PFS Corporation*, 674 So.2d 60 (Ala. S.Ct. 1995).

The undersigned finds that § 5403(g), which designated "energy conservation standards" as "preemptive", has no impact on the issues before this court. Plaintiffs do not seek to impose an energy conservation standard not adopted or approved by HUD.

Given the nearly identical nature of the general preemption and saving clause provisions in the NTMVSA and MHCSSA, this court finds, in light of *Geier,* that plaintiffs' claims are not expressly preempted. The general preemption clause § 5403(d), when read in conjunction with the "savings clause" § 5409(c), provides for preemption of state and local safety standards, not standards imposed by the operation of state law tort law. The savings clause preserves some state law tort actions involving matters on which federal standards have been established, and in such actions, compliance with the federal standards will not automatically preclude liability. The state enforcement clause permits state court jurisdiction under state law over matters on which no federal standard has been established.

## II. Implied Preemption

Although the undersigned has found that plaintiffs' claims are not expressly preempted, that finding does not bar this court from finding that plaintiffs' claims are impliedly preempted. In *Geier*, after determining that the savings clause preserved some common law actions, the Court examined whether the clause went further, preserving all tort actions from ever being preempted. *Geier*, 529 U.S. at 869. The Court concluded that the savings clause **did not** bar the ordinary application of implied preemption principles. *Id*. The Court reasoned that

22

Congress would not enact legislation that required compliance with federal regulation as a precondition, and then allow states to carve away at that regulation through common law private actions that were in conflict. *Id*. at 869-870. Rather, the savings clause serves as a buffer to the express preemption clause allowing for some common law liability while still preserving implied preemption principles to protect the overall objectives of the regulatory scheme. *Id*. at 870.

Redman and Champion argue that under *Geier* plaintiffs claims are conflict preempted because § 3280.504(b) does not establish a "minimum" standard, but rather gives manufacturers a choice of exterior wall construction that states are forbidden from prohibiting. Consequently, Redman and Champion argue that a favorable judgment for plaintiffs in this action would effectively eliminate a federally granted and federally authorized option via a state court action, which would present an actual conflict with the superintendence of federal law. The undersigned agrees.

The test for determining whether a state action stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress is "whether the State rule can be enforced or the action taken without impairing the Federal superintendence of the manufactured home industry as established by the Act." 24 C.F.R. § 3282.11(d); *Choate*, 222 F.3d at 795. The rule of state law that plaintiffs seek to impose by this action would compromise the federal superintendence of the manufactured home industry as established by the MHCSSA.

In *Geier*, the regulation at issue established the types of passenger restraint systems

which car manufacturers were permitted to install in their vehicles. The regulation did not

establish a minimum standard above which the states were free to regulate, but rather provided

the manufacturer with a range of choices among different passenger restraint devices, any of

which would satisfy the federal government's cost, safety and performance requirements.

*Geier,* 529 U.S. at 874-875. The car manufacturer selected one of the options and installed that

option in a vehicle in which the plaintiff was injured.   The plaintiff claimed that the car

manufacturer should have selected an option utilizing an airbag instead of the other options

presented.  *Id.* at 881. The Court found that this would have effectively eliminated use of the

other choices offered under the federal standards. Thus, if the plaintiff's action was allowed to

proceed, a state rule of law would effectively eliminate one of the chosen federal methods of

passenger restraint by declaring that only one federally granted option was appropriate, thus

destroying the "variety and mix" allowed by the regulation.  *Id.*  Thus, the Court found that the

rule of state tort law sought by the plaintiff would have stood as an obstacle to the

accomplishment and execution of federal objectives.  *Id.* The plaintiff's action was therefore

impliedly preempted.

Section 3280.504(b), like the regulation at issue in *Geier*, does not set a minimum

standard for exterior wall construction, but rather the regulation provides manufacturers with

federally authorized options for the construction of exterior walls. While HUD has, in some

instances, designated certain manufactured housing standards as "minimums" or used

modifying language to designate that the standard sets only a minimum requirement, there is

no such language contained in § 3280.504(b). To the contrary, the options are contained in one

of the energy conservation regulations, designated by Congress as "preemptive." *See* 42

U.S.C. § 5403(g); *See also* 57 Fed. Reg. 6420 (Feb. 24, 1992) (proposing to amend § 504 "to

include preemptive standards significantly upgrading the existing energy conservation

requirements"); 58 Fed. Reg. 54975, 54975 (Oct. 25, 1993) (amending § 504 "to include

preemptive standards significantly upgrading the existing energy conservation requirements").

Accordingly, as in *Geier*, if plaintiffs were successful in this action, a state rule of law would

effectively eliminate one of the statutorily approved options, forcing manufactured home

manufacturers to choose one of the other two options (ventilated or unventilated walls) over

the option permitting placement of a vapor barrier on the "living space side" of the wall.[9]

Such a rule would conflict with, impair and frustrate the Federal superintendence of the

manufactured home industry by effectively precluding the use of one of the federal chosen

methods of exterior wall construction. Under *Geier*, that result is impermissible. Plaintiffs'

state law claims are impliedly conflict preempted.

The undersigned's conclusion is further supported by post-*Geier* jurisprudence. Since

*Geier*, courts have consistently relied on the distinction between federal regulations which

offer manufacturers a choice and federal regulations which set only a minimum standard in

---

[9] An award of damages by a state or federal court is considered to be a method of regulation because it is designed to influence conduct. *Kelly v. General Motors Corp.*, 705 F.Supp. 303, 305 (W.D.La. 1988) (citations omitted). Thus, a "manufacturer faced with the prospect of choosing [an] option or facing potential exposure to compensatory and punitive damages for failing to do so, has but one realistic choice." *Id.* A court decision that removes the element of choice authorized by federal regulations will frustrate the statutory scheme. *Id.*

determining whether state law actions are impliedly preempted. *See Choate v. Champion Home Builders Company*, 222 F.3d 788, 795-796 (10th Cir. 2000); *Griffith v. General Motors Corp.*, 303 F.3d 1276, 1280-1282 (11th Cir. 2002); *Harris v. Great Dane*, 234 F.3d 398, 401-403 (11th Cir. 2000); *Stone v. Frontier Airlines, Inc.*, 256 F.Supp.2d 28, 43-44 (D.Mass. 2002); *Molina v. BIC USA, Inc.*, 136 F.Supp.2d 196208-209 (S.D.N.Y. 2000); *O'Hara v. General Motors Corp.*, 2006 WL 1094427, *4-5 (N.D.Tex. 2006). If the federal regulation does not provide manufacturers a choice, but rather sets only a minimum standard of compliance, courts routinely find the state law action is not preempted. *See Choate* and *Harris*. On the other hand, when the federal regulation provides manufacturers a choice, courts routinely find that the state law action is preempted to the extent that success in the action would effectively eliminate a federally authorized option. *See Griffith* and *O'Hara, supra.; Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377, 381-382 (7th Cir. 2000); *Heinricher v. Volvo Car Corp.*, 809 N.E.2d 1094, 1097-1098 (Mass. App. Ct. 2004); *Moser v. Ford Motor Co.*, 28 Fed.Appx. 168170-171 (4th Cir. 2001); *Carrasquilla v. Mazda Motor Corp.*, 166 F.Supp.2d 169, 175-176 (M.D.Pa. 2001).

That is the case here. If plaintiffs succeed here, this would effectively eliminate a federally authorized option. At the time plaintiffs mobile home was constructed, the regulatory scheme set forth in § 3280.504(b) provided a "variety or mix" of alternative exterior wall construction methods. Thus, Redman and Champion had the option of placing a vapor barrier on the "living space side" of the wall, constructing an unventilated wall, or constructing a

ventilated wall. None of the options was mandated, nor was any option required to be used in hot and humid climates. Redman and Champion complied with the regulatory scheme by selecting the vapor barrier on the "living space side" option, instead of the ventilated or unventilated exterior wall options in the construction of plaintiffs' mobile home.

By this lawsuit, plaintiffs clearly challenge the manufacturer's selection of one federally sanctioned construction method over another. Their cause of action, if successful, would establish a rule that, to avoid liability in hot and humid climates, manufacturers must construct either ventilated or unventilated walls in all of their manufactured homes. As such, the vapor barrier option specifically afforded manufacturers by HUD under the regulatory scheme would be foreclosed. Plaintiffs' claims would frustrate HUD's decision to allow manufacturer's a choice of exterior wall construction techniques by excluding one federally sanctioned method from the range of available federally approved methods of construction, while imposing a uniform state law requirement on manufacturers of homes in situated in hot and humid climates. Plaintiffs' state law claims are therefore impliedly conflict preempted. *See Griffith, O'Hara, Hurley, Heinricher, Moser,* and *Carrasquilla, Supra.*

Moreover, to impose common law damages on Redman and Champion for doing what a federal regulation specifically authorized them to do would directly conflict with federal law. "A state cannot impose common law damages on individuals for doing what a federal act or regulation 'authorized them to do.'" *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998) quoting *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318-320,

27

101 S.Ct. 1124 (1981).

Finally, permitting the instant action to proceed would be inconsistent with HUD's initial decision not to impose a geographic restriction on the construction of exterior walls in homes situated in humid climates. The history of § 504(b) set forth above reveals that in 1992 and 1993, HUD considered amending the standard for construction of exterior walls, and more specifically, considered whether the placement of vapor retarders in exterior walls should be related to the condensation zone in which the home is located. *See* 57 Fed. Reg. 6420 (Feb. 24, 1992) and 58 Fed. Reg. 54975 (Oct. 25, 1993). After reviewing comments expressing "a wide range of views on the placement and need for a vapor retarder" in exterior walls, the Department did not propose a new standard or an additional construction option for homes located in hot and humid climates. 58 Fed. Reg. at 54993. Thus, the existing standard for construction of exterior walls was left undisturbed. Accordingly, no geographical restriction was implemented at that time. Rather, it was not until November 2005 that HUD adopted a standard incorporating an additional method for construction of exterior walls of homes situated in hot and humid climates. *See* 70 Fed.Reg. 72024 (Nov. 30, 2005).

Although in 1993 HUD did not expressly state that it was not necessary to adopt a standard accounting for the geographical location in which a manufactured home is located, the regulative history implies that after careful consideration HUD affirmatively chose not to change the existing standard at that time. Nevertheless, by this lawsuit, plaintiffs seek to retroactively impose a geographic restriction on the standard under which their 1997 model

mobile home was constructed, a restriction which, at that time, HUD had declined to impose. Given the regulatory history cited above, such a rule would be inconsistent with HUD's initial determination not to change the existing standard.[10] This additional reason provides further support for the undersigned's conclusion that plaintiffs' action is impliedly conflict preempted.

## Conclusion

Based on the foregoing reasons, the Motions to Dismiss filed on behalf of Redman and Champion are **GRANTED.** Accordingly, this action is **DISMISSED** with prejudice.

January 26, 2007, at Lafayette, Louisiana.

C. Michael Hill

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

---

[10]This distinguishes the instant case from *Sprietsma v. Mercury Marine*, 537 U.S. 51, 123 S.Ct. 518 (2002). In *Sprietsma*, there was no standard or existing regulation regarding propeller guards, either requiring such guards or not requiring such guards. Although the Coast Guard considered, but had not adopted, a federal propeller guard regulation, the Coast Guard did not establish a federal policy against the use of propeller guards or decide that as a matter of policy, the States could not impose some version of propeller guard regulation. *Id.* at 67. Here, in sharp contrast to the Coast Guard's decision at issue in *Sprietsma*, HUD's decision was not that there would be no federal regulation of the construction of exterior walls of manufactured homes, but rather that the existing standard, mandating that one of three options be employed in the construction of exterior walls of manufactured homes, not be changed.