**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **JAMES PERRY,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * Case No.: 2:06-cv-00502-MEF |
| | * |
| **FLEETWOOD ENTERPRISES, INC., et. al.** | * |
| | * |
| **Defendants.** | * |

**PLAINTIFF'S MOTION TO**
**COMPEL DISCOVERY RESPONSES OF DEFENDANTS**
**AND MEMORANDUM IN SUPPORT**

Plaintiff, by counsel, hereby files this Motion to Compel Discovery Responses and Memorandum in support from Defendants.

**INTRODUCTION**

Plaintiff propounded Request for Production of Documents and Tangible Things as well as Interrogatories upon Defendants Fleetwood Homes of Georgia, Inc. and Fleetwood Enterprises, Inc. Defendants asked for and were granted an extension by Plaintiff to provide such response by August 3, 2007. Nonetheless, Defendants' responses to discovery are insufficient. Plaintiff requested Defendants to reconsider their responses but has not received a supplemental response (See Exhibit "A").

Plaintiff below provides a brief recitation of the relevant case law and rules regarding discovery in this Court and then identifies each respective request and Defendants' inadequate response thereafter.

## I.    <u>LEGAL ARGUMENT</u>

A party may object to some or all discovery sought.  However, the party must explain the reason for the objection.   FED. R. CIV. P. 34(b).  It is insufficient to merely assert that a party objects because the request for production is vague, burdensome, overbroad and ambiguous, and the objection may be waived as a result.  <u>Thompson v. HUD</u>, 199 F.R.D. 168, 171 (D. Md. 2001).

"Each interrogatory shall be answered separately and fully in writing under oath."  Fed. R. Civ. P. 34(b) (1).  A party must provide all information known to him and all information known to his attorney.  <u>Hickman v. Taylor</u>, 329 U.S. 495, 67 S. Ct. 385 (1947) ("A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney."); 8A Wright, Miller & Marcus, <u>Federal Practice and Procedure</u> § 2177 (2006) ("A party must disclose facts in its attorney's possession even though the facts have not been transmitted to the party.").  Moreover, a party must furnish all available information, unless it cannot be provided without undue labor and expense.  8A Wright, Miller & Marcus, <u>Federal Practice and Procedure</u> § 2177 (2006).

"Answers to interrogatories should be in such form that they may be used upon at trial." <u>Fisher v. Baltimore Life Ins. Co.</u>, - 235 F.R.D. 617, 628 (N.D. W.Va. 2006).  As a result, answers generally should not incorporate by reference materials outside of the answer, including other answers and the complaint.  <u>Id.</u>; 8A Wright, Miller & Marcus, <u>Federal Practice and Procedure</u> § 2177.  <u>See also</u> <u>Martin v. Easton Pub. Co.</u>, 85 F.R.D. 312, 315 (E.D. Pa. 1980) ("[T]he point of interrogatories is to obtain a party's admissions and contentions under oath and to narrow the issues in the case.  Documents and testimony are not infrequently subject to varying interpretations and therefore simply referring defendant to whatever it might find therein

does not comply with the court's order.") [1]    However, under Rule 33(d), an answer to an interrogatory may be ascertained from appropriate business records, if the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory, as for the party served.  FED. R. CIV. P.33 (d).  The specification must be made in "sufficient detail to permit the interrogating party to locate and to identify…the records from which the answer may be ascertained."  Id.  The party resisting discovery must make a prima facie showing that the use of Rule 33(d) is inadequate to the task of answering discovery, either because the information would be too difficult to locate, the answer is not completely found in the documents rarely reveal contentions of facts or law, some courts have found that business records may not be used to answer contention interrogatories.  Id.

"Rule 33 is satisfied by answers which on the whole disclose a conscientious endeavor to understand the question and to answer those questions fully."  8A Wright, Miller & Marcus, Federal Practice and Procedure § 2177 (2006).  If a party is unable to answer an interrogatory, he may state so, under oath.  Id.  Under Discovery Guideline 9, the answering party shall state that the answer is partial or incomplete.

Under the 2000 amendments to FED. R. CIV. P. 26(b), the scope of discovery is limited to matters that relate to the claim or defense of any party.  The Advisory Committee Notes to Rule 26 stated that:  "The Committee intends that the parties and the court focus on the actual

---

[1]    See also VICA Coal Co., Inc v. Crosby, 212 F.R.D. 498, 505 (S.D. W.Va. 2003) ("Objecting to Interrogatories and then offering an answer to opposing counsel in a letter and pleading in response to Plaintiff's Motion to Compel as Defendant's counsel did in this case will not suffice at all.  The Rules require that answers to Interrogatories shall be made separately and fully under oath and signed by the party making them with the parties' attorney signing any objections.   The course taken by Defendant's counsel has undermined the important function and utility of Interrogatories as they have been posed by the Plaintiff in this case.  Seeking information through Interrogatories is an efficient and cost-effective method of discovery and marshaling evidence for trial.  Indeed, the Rules anticipate that it could lead to the discovery of evidence worthy of admission at trial.").  If a party fails to sign the answer under oath, the Court may enter an order instructing the party to complete his answers and sign the answers under oath before a notary public.  Id.; Pack v. South Carolina Wildfire and Marine Resources Debt., 92 F.R.D. 22, 24 (D.S.C. 1971).

claims and defenses involved in the action…The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleading." Accord 8 Wright and Miller, Federal Practice and Procedure § 2028.

However, "the 2000 amendments to Rule 26 have not effected any radical change in the availability of discovery in this situation. The present standard 'relevant to the claim or defense of any party' – is still a very broad one." United Oil Co., Inc. v. Parts Assocs., Inc., 227 F.R.D. 404, 409 (D. Md. 2005). Trial courts have broad discretion to determine relevancy for discovery purposes. Id.

## II.    DEFENDANTS' DISCOVERY RESPONSES

### a.    FLEETWOOD HOMES OF GEORGIA, INC

FLEETWOOD HOMES OF GEORGIA, INC., (hereinafter "Fleetwood of Georgia"), one of the Defendants in the above civil action, provided the following responses to the Plaintiff's Interrogatories:

**Interrogatory 6**

Please list each complaint that has been filed against this Defendant within the past ten (10) years with any agency of the State of Alabama or federal government, or filed in any state or federal court or arbitration giving the date of each complaint, the agency, court or arbitrator involved, the person making the complaint and their address and telephone number, and the results of each complaint.

**ANSWER**: See the above introductory paragraph and General Objections. Fleetwood of Georgia also objects on the basis that this interrogatory is not calculated to lead to the discovery of relevant evidence, is overly broad, and is unduly burdensome where the subject of the inquiry is without limitation except as to the ten year time period. The interrogatory vastly exceeds the subject matter of the allegations in the complaint because it contains no limits on the nature of the alleged complaint, whether the complainant resided within Alabama or more

particularly within one of the 23 counties identified as the humid region, and contains no geographical limitations and seeks information on complaints *nationwide* that may have no relevance whatsoever to the present lawsuit.

Plaintiff is entitled to a response to this interrogatory. In other areas, Plaintiff limited the area of inquiry to "moisture" issues and Defendant complains that it is too vague to understand "moisture" issues. Regardless, federal law mandates that this information be kept as discussed below. Defendant's basis for objecting is that the inquiry is irrelevant, overly broad and unduly burdensome.

Plaintiff has alleged that the Defendants knowingly sold a home which was defective. Complaints that have been lodged against this Defendant within the last ten (10) years are relevant in that many HUD endorsed studies appeared longer than 10 years ago.[2] Thus, Defendant should have been on notice at a minimum when these HUD endorsed studies first appeared. If, coupled with these studies, consumers or SAA's or others were complaining, it is directly relevant as to whether Defendant "knowingly" sold a defective home. Also, Defendants have raised the specter of lack of "notice" as to Plaintiff's warranty claims but if Defendant knew the product was defective when it sold it, notice is not required to be given by Plaintiff for obvious reasons. Thus, this request is clearly relevant.

The request is neither overly broad nor unduly burdensome. First, federal law requires that Defendant keep track of complaints. *See* 24 CFR § 3282.401-416; *See e.g.* Sec. 3282.413 Notices, bulletins and other communications. ("Manufacturers shall keep complete records of all communications regarding imminent safety hazards, serious defects, defects, and

---

[2] *See* Department of Housing and Urban Development (HUD) Research Grant 1995 - *Manufactured Housing Walls That Provide Satisfactory Moisture Performance in All Climates* ("A current-practice manufactured housing wall with an interior vapor retarder was shown to provide satisfactory performance in cold climates, but poor performance in a hot, humid climate. The use of an interior vapor retarder in the wall of an air conditioned building exposed to a hot and humid climate can cause high relative humidity at it's outside surface, thereby providing a conducive environment for mold and mildew growth.")

noncompliances.")  Indeed, any time a complaint is made, a manufacturer is compelled under federal law to "determine whether they are responsible" and thus this inquiry should be readily ascertainable to Defendant.    Sec.    3282.405    Investigation, Determination, Repair and Notification by Responsible Parties. ("(b) Whenever a responsible party receives from any source information that indicates the likely existence of a defect…in a manufactured home for which they are responsible for repair, the responsible party shall, as soon as possible, but not later than 20 days after receipt of the information, carry out any necessary investigations or inspections to determine and shall determine whether they are responsible for correction and/or notification. They shall report the results of the initial investigation to the SAA as required.")

Second, Defendant maintains what is commonly referred to as a "Quality Assurance Manual" in which it maintains information relating to this inquiry as well as a design approval manual in which anything Defendant wants to do in the factory has to be submitted to a HUD-approved third party for review and upon their review and approval, whatever is returned from the third party is sent back to the Defendant and stored (many manufacturers do so electronically which should make this process easier).

Because they are compelled to do so by federal law (and even if they were not), it is not unreasonable that Defendant should be able to respond to this inquiry.

**Interrogatory 8**

Please identify the person in your corporation that is most knowledgeable about the methods of wall construction for homes located in humid and fringe climates including the Waiver for Condensation Control for Exterior Walls of Manufactured Homes Sited in Humid and Fringe Climates, Department of Housing and Urban Development 24 CFR Part 3280.

**ANSWER**:    See the above introductory paragraph and General Objections.    Fleetwood of Georgia further objects on the grounds that this question is overly broad, unduly burdensome, and asks for a legal conclusion in that it requires Fleetwood of Georgia to interview all employees and then make a

determination as to who is the "most knowledgeable" about the topics raised in this question, with no limitation as to the time period requested.

This request does not ask for a legal conclusion nor is it overly broad or unduly burdensome. Defendant should be able to answer this inquiry for they are compelled to do so under Federal Rule of Civil Procedure Rule 30(b)(6).

## Interrogatory 18

Describe whether you have utilized the "waiver" by building homes to Part IV Housing and Urban Development 24 CFR Part 3280 "Condensation Control for Exterior Walls of Manufactured Homes Sited in Humid and Fringe Climates; Waiver; Final Rule" at page 20401 or any later amendments to this "waiver." If so, describe how many homes have been so built, when this began and your reasons for doing so.

**ANSWER**: See the above introductory paragraph and General Objections. Fleetwood of Georgia further objects on the grounds that this question is wholly irrelevant to the issues in this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving those objections, Fleetwood of Georgia states that the subject home was not constructed pursuant to the final rule of the waiver published at 2002 FR 20401, or any later amendments.

This interrogatory is relevant in that Defendant has alleged that it had to follow federal law and place a vapor barrier on the living side of the walls, implying that if they had an option, they would have followed it. Plaintiff thinks this defense is bogus and misleading. Regardless, it is highly relevant whether Defendant utilized a "waiver" they lobbied to get.

## Interrogatory 19

Describe to what standard under 24 CFR 3280.504 you built the home which is the subject matter of this lawsuit and the reasons therefore.

**ANSWER**: See the above introductory paragraph and General Objections. Fleetwood of Georgia further objects on the grounds that this question seeks a legal conclusion, and the question is vague and difficult to answer in that section 3280.504 covers more than merely the placement of vapor barriers in the exterior walls, which is the subject of this lawsuit. Without waiving those objections, Fleetwood of Georgia states it constructed the home in

conformity with standards of construction that met or exceeded those standards set forth in 24 C.F.R. 3280.504 for the construction of exterior walls.

24 CFR 3280.504 simply requires that a manufacturer make a choice as to which standard it will build a home (both under subsection a and b). It does not require a legal conclusion and Defendant is compelled by federal law to make such a choice. This is not a difficult question to answer. Defendant admits so much itself in its previous Answer to Interrogatory 13 "…Fleetwood…states it was required to comply with applicable law by utilizing one of three options for the construction of the subject home. All three options of exterior wall construction were approved and mandated by the federal Department of Housing and Urban Development for a home to have the HUD seal."). Plaintiff simply wants to know which choice was utilized.

**Interrogatory 20**

Please describe any and all submissions and/or requests made by you to HUD for alternative construction of manufactured homes pursuant to 24 CFR § 3282.14 and/or 24 C.F.R. § 3280.10 within the last twenty (20) years.

**ANSWER**: See the above introductory paragraph and General Objections. Fleetwood of Georgia further objects on the grounds that this question is overly broad and unduly burdensome because it seeks information on any alternative construction method, whether related to the issues in this lawsuit or not. Without waiving those objections, Fleetwood of Georgia states that the exterior walls of the subject home were not constructed pursuant to an application for an alternative design method per 24 CFR §3280.10 or 24 CFR §3282.14.

The HUD Code has always encouraged "alternative" construction methods wherein

Defendant could deviate:

Accordingly, HUD will permit manufacturers to utilize new designs or techniques not incompliance with the Standards in cases: (1) Where a manufacturer proposes to utilize construction that would be prohibited by the Standards; (2) Where such construction would provide performance that is equivalent to or superior to that required by the Standards; and (3) Where (i) compliance with the Standards would be unreasonable because of the circumstances of the particular case…

24 CFR § 3282.14  (emphasis supplied);  *See also* 24 C.F.R. § 3280.10 Use of alternative construction ("Requests for alternative construction can be made…").

Defendant has implied that it had no option and that the HUD Code made them build the home in the manner prescribed (despite the foregoing and despite the fact that the HUD Code has never required a vapor barrier on the living side and finally that, regardless, the HUD Code has always required that the home perform – that the walls not condensate - regardless of the option to which the home is built).  Defendant has also implied that it is difficult to use alternative construction.  Defendant should be compelled to answer this interrogatory to test the veracity of its allegations.

**Interrogatory 22**

Describe what efforts and/or any responses, if any, you made regarding any complaints pursuant to 24 CFR § 3282.401-416 or other sub part which had been lodged regarding issues relating to mold, soft walls, moisture problems, condensation problems or issues relating to 24 C.F.R. § 3280.103(b)(3), 24 CFR § 3280.504(a) or (b).

**ANSWER**:  See the above introductory paragraph and General Objections.  Fleetwood of Georgia further objects on the grounds that this question simply is too vague and too overly broad to require an answer. Without waiving those objections, Fleetwood of Georgia states upon information and belief that the plaintiff made no complaints to administrative entities  pursuant to 24 CFR §3282.401 et seq. concerning mold, condensation, or <u>any</u> other construction related issue.

The answer to this inquiry is not overly broad or vague for the same reasons interrogatory 6 above is not.  Federal law compels this Defendant to maintain such records and notice is an issue in this case. Plaintiff does not limit this to his home nor does the HUD Code (as Defendant attempts top do).  Defendant should respond to this.

**Interrogatory 23**

If you have replaced and/or repaired any wall(s) in the hot and humid climate as defined by 24 CFR Part 3280 in a manufactured home wherein you did not use a vapor barrier on the living side of the wall or walls, please describe such incidents.

**ANSWER**:  See the above introductory paragraph and General Objections.  Fleetwood of Georgia further objects on the grounds that this question is vague and unintelligible, overly broad and unduly burdensome, not limited in time, scope, or geographical area, and not calculated to lead to the discovery of relevant, admissible evidence, and the question would require Fleetwood of Georgia to embark upon an extensive investigation process to find out when and where it ever replaced a portion of an exterior wall for any reason whatsoever.

Defendant has maintained that the HUD Code compelled them to place a vapor barrier on the living side of the walls in the Plaintiff's home.  Thus, whether Defendant has in fact done so in other homes is relevant to Defendant's credibility and ability to build the home in another manner.  If Defendant replaced walls which did not have a vapor barrier on the living side of the walls, Defendant would be violating the HUD Code, if Defendant is to believed.  Additionally, if Defendant is replacing wet, moldy walls by using walls which do not have a vapor barrier, this is relevant to notice and credibility as well.

**Interrogatory 26**

Please describe who produces the vinyl covered gypsum panels (VOG) for each facility shipping into the Hot and Humid Climate area, and provide the Material Safety Data Sheets for each producer, along with their installation instructions, warranty, and any other documents relating thereto.

**ANSWER**:  See the above introductory paragraph and General Objections.  Fleetwood of Georgia further objects on the grounds that this question is not limited in time or scope.  Without waiving those objections, Fleetwood of Georgia states that ESCO, located in Douglas, Georgia, manufactures the VOG for Fleetwood of Georgia.  As for the documents requested, Fleetwood of Georgia is diligently searching its records and will produce documents responsive to this request, if any, at a mutually convenient time and place.

Plaintiff is entitled to the name and address, telephone number and any other relevant contact information from Defendant.

FLEETWOOD HOMES OF GEORGIA, INC., (hereinafter "Fleetwood of Georgia"), one of the Defendants in the above civil action, provided the following responses to the Plaintiff's Request for Production of Documents:

## Request for Production 1

Please produce a true and correct copy of any and all documents, correspondence, policies, notes, memoranda, e-mail (internal or external) or any other written document of any manner (including any various draft versions) maintained by you or anyone in your control, relating to replaced and/or repaired wall(s) in the hot and humid climate as defined by 24 CFR Part 3280 within the last ten (10) years.

**RESPONSE:** Fleetwood of Georgia objects to this request as overly broad, unduly burdensome, and not calculated to lead to the discovery of relevant, admissible evidence. Without waiving said objections, Fleetwood of Georgia states that it will produce records potentially responsive to this request that pertain to the plaintiff's home at a mutually convenient time and place.

Defendant's basis for objecting is that the inquiry is irrelevant, overly broad and unduly burdensome. Defendant has maintained that the HUD Code compelled them to place a vapor barrier on the living side of the walls in the Plaintiff's home. Thus, whether Defendant has in fact done so in other homes is relevant to Defendant's credibility and ability to build the home in another manner. If Defendant replaced walls which did not have a vapor barrier on the living side of the walls, Defendant would be violating the HUD Code, if Defendant is to be believed. Additionally, if Defendant is replacing wet, moldy walls by using walls which do not have a vapor barrier, this is relevant to notice and credibility as well. Plaintiff has alleged that the Defendants knowingly sold a home which was defective. Complaints (and if walls were replaced a Complaint was lodged) that have been lodged against this Defendant within the last ten (10) years are relevant in that many HUD endorsed studies appeared longer than 10 years

ago.[3]  Thus, Defendant should have been on notice at a minimum when these HUD endorsed studies first appeared which is directly relevant as to whether Defendant "knowingly" sold a defective home.  Also, Defendant has raised the specter of lack of "notice" as to Plaintiff's warranty claims but if Defendant knew the product was defective when it sold it, notice is not required to be given by Plaintiff for obvious reasons.  Thus, this request is clearly relevant.

The request is neither overly broad nor unduly burdensome.  First, federal law requires that Defendant keep track of complaints.  *See* 24 CFR § 3282.401-416; *See e.g.* Sec. 3282.413 Notices, bulletins and other communications.  ("Manufacturers shall keep complete records of all communications regarding imminent safety hazards, serious defects, defects, and noncompliances.")  Indeed, any time a complaint is made, a manufacturer is compelled under federal law to "determine whether they are responsible" and thus this inquiry should be readily ascertainable to Defendant.  Sec. 3282.405    Investigation, Determination, Repair and Notification by Responsible Parties. ("(b) Whenever a responsible party receives from any source information that indicates the likely existence of a defect…in a manufactured home for which they are responsible for repair, the responsible party shall, as soon as possible, but not later than 20 days after receipt of the information, carry out any necessary investigations or inspections to determine and shall determine whether they are responsible for correction and/or notification. They shall report the results of the initial investigation to the SAA as required.")

Second, Defendant maintains what is commonly referred to as a "Quality Assurance Manual" in which it maintains information relating to this inquiry as well as a design approval

---

[3]    *See* Department of Housing and Urban Development (HUD) Research Grant  1995 - *Manufactured Housing Walls That Provide Satisfactory Moisture Performance in All Climates* ("A current-practice manufactured housing wall with an interior vapor retarder was shown to provide satisfactory performance in cold climates, but poor performance in a hot, humid climate. The use of an interior vapor retarder in the wall of an air conditioned building exposed to a hot and humid climate can cause high relative humidity at it's outside surface, thereby providing a conducive environment for mold and mildew growth.")

manual in which anything Defendant wants to do in the factory has to be submitted to a HUD-approved third party for review and upon their review and approval, whatever is returned from the third party is sent back to the Defendant and stored (many manufacturers do so electronically which should make this process easier).

Because they are compelled to do so by federal law (and even if they were not), it is not unreasonable that Defendant should be able to respond to this inquiry.

**Request for Production 4**

Please produce a true and correct copy of any and all documents, correspondence, policies, notes, memoranda, e-mail (internal or external) or any other written document of any manner (including any various draft versions) maintained by you or anyone in your control, relating to any complaint or other information indicating the possible existence of a non-compliance, defect, serious defect, or imminent safety hazard, including but not limited to, documents relating to any request by any State Administrative Agency (SAA) or the Secretary of the Housing and Urban Development (HUD) regarding any sub-parts found in 24 CFR 3282.401 to 416 and furnish copies of all documents relating thereto, along with any reporting required by 3282, and class investigations as required.

**RESPONSE:** Fleetwood of Georgia objects to this request on the grounds that it is vague and unintelligible, overly broad, and unduly burdensome. Without waiving said objections, Fleetwood of Georgia states that it will produce at a mutually convenient place and time documents pertaining to the plaintiff's home that may be responsive to this request.

Plaintiff has alleged that the Defendants knowingly sold a home which was defective. Complaints (and if walls were replaced a Complaint was lodged) that have been lodged against this Defendant within the last ten (10) years are relevant in that many HUD endorsed studies appeared longer than 10 years ago.[4]  Thus, Defendant should have been on notice at a minimum when these HUD endorsed studies first appeared which is directly relevant as to whether

---

[4]     *See* Department of Housing and Urban Development (HUD) Research Grant  1995 - *Manufactured Housing Walls That Provide Satisfactory Moisture Performance in All Climates* ("A current-practice manufactured housing wall with an interior vapor retarder was shown to provide satisfactory performance in cold climates, but poor performance in a hot, humid climate. The use of an interior vapor retarder in the wall of an air conditioned building exposed to a hot and humid climate can cause high relative humidity at it's outside surface, thereby providing a conducive environment for mold and mildew growth.")

Defendant "knowingly" sold a defective home.  Also, Defendant has raised the specter of lack of "notice" as to Plaintiff's warranty claims but if Defendant knew the product was defective when it sold it, notice is not required to be given by Plaintiff for obvious reasons.  Thus, this request is clearly relevant.

The request is neither overly broad nor unduly burdensome.  First, federal law requires that Defendant keep track of complaints.  *See* 24 CFR § 3282.401-416; *See e.g.* Sec. 3282.413 Notices, bulletins and other communications.  ("Manufacturers shall keep complete records of all communications regarding imminent safety hazards, serious defects, defects, and noncompliances.")  Indeed, any time a complaint is made, a manufacturer is compelled under federal law to "determine whether they are responsible" and thus this inquiry should be readily ascertainable to Defendant.  Sec.  3282.405  Investigation, Determination, Repair and Notification by Responsible Parties. ("(b) Whenever a responsible party receives from any source information that indicates the likely existence of a defect…in a manufactured home for which they are responsible for repair, the responsible party shall, as soon as possible, but not later than 20 days after receipt of the information, carry out any necessary investigations or inspections to determine and shall determine whether they are responsible for correction and/or notification. They shall report the results of the initial investigation to the SAA as required.")

Second, Defendant maintains what is commonly referred to as a "Quality Assurance Manual" in which it maintains information relating to this inquiry as well as a design approval manual in which anything Defendant wants to do in the factory has to be submitted to a HUD-approved third party for review and upon their review and approval, whatever is returned from the third party is sent back to the Defendant and stored (many manufacturers do so electronically which should make this process easier).

14

Because they are compelled to do so by federal law (and even if they were not), it is not

unreasonable that Defendant should be able to respond to this inquiry.

**Request for Production 9**

Please produce a true and correct copy of any and all documents, correspondence, policies, notes, memoranda, e-mail (internal or external) or any other written document of any manner (including any various draft versions) maintained by you or anyone in your control, relating to any and all submissions and/or requests made by you to the Department of Housing and Urban Development HUD for alternative construction of manufactured homes pursuant to 24 CFR § 3282.14 and/or 24 C.F.R. § 3280.10 within the last twenty (20) years.

**RESPONSE:** See the above introductory paragraph and General Objections. Fleetwood of Georgia further objects on the grounds that this question is overly broad and unduly burdensome because it seeks information on any alternative construction method, whether related to the issues in this lawsuit or not. Without waiving those objections, Fleetwood of Georgia states that the exterior walls of the subject home were not constructed pursuant to an application for an alternative design method per 24 CFR §3280.10 or 24 CFR §3282.14.

The HUD Code has always encouraged "alternative" construction methods wherein

Defendant could deviate:

Accordingly, HUD will permit manufacturers to utilize new designs or techniques not incompliance with the Standards in cases: (1) Where a manufacturer proposes to utilize construction that would be prohibited by the Standards; (2) Where such construction would provide performance that is equivalent to or superior to that required by the Standards; and (3) Where (i) compliance with the Standards would be unreasonable because of the circumstances of the particular case…

24 CFR § 3282.14 (emphasis supplied); *See also* 24 C.F.R. § 3280.10 Use of alternative

construction ("Requests for alternative construction can be made…").

Defendant has implied that it had no option and that the HUD Code made them build the

home in the manner prescribed (despite the foregoing and despite the fact that the HUD Code has

never required a vapor barrier on the living side and finally that, regardless, the HUD Code has

always required that the home perform – that the walls not condensate - regardless of the option

to which the home is built).  Defendant has also implied that it is difficult to use alternative

construction.  Defendant should be compelled to answer this interrogatory if this is true.

## Request for Production 13

Please produce a copy of every complaint that has been filed against this
Defendant within the past ten (10) years with any agency of the county, state or
federal government, with any state or federal court or arbitration within the last
ten (10) years.

**RESPONSE:** See the above introductory paragraph and General
Objections.  Fleetwood of Georgia also objects on the basis that this interrogatory
is not calculated to lead to the discovery of relevant evidence, is overly broad, and
is unduly burdensome where the subject of the inquiry is without limitation except
as to the ten year time period.  The request vastly exceeds the subject matter of
the allegations in the complaint because it contains no limits on the nature of the
alleged complaint, whether the complainant resided within Alabama or more
particularly within one of the 23 counties identified as the humid region, and
contains no geographical limitations and seeks information on complaints
*nationwide* that may have no relevance whatsoever to the present lawsuit.

See response to Request for Production 1 above for the basis as to why this request

should be compelled.

## Request for Production 15

Please produce every document, report, study, analysis and/or conclusion
upon which Defendant relied when making the decision as to whether to follow
the Waiver for Condensation Control for Exterior Walls of Manufactured Homes
Sited in Humid and Fringe Climates, Department of Housing and Urban
Development24 CFR Part 3280 and any of the various versions thereto.

**RESPONSE:** Fleetwood of Georgia objects to this request on the grounds
that it is vague, overly broad, and unduly burdensome, and asks for a legal
conclusion.  Without waiving said objections, Fleetwood of Georgia states that it
is reviewing its records and will produce documents responsive to this request, if
any, at a mutually convenient time and place.

Although Defendant ultimately concludes that it will produce records responsive to this

request, the request is not vague or unduly burdensome.  If Defendant has documents which

provide a basis by which they determined not to follow the "waiver", it should be produced.

Defendant's opinion or decision as to utilize the "waiver" is not a "legal conclusion." Furthermore, Defendant has already been granted an extension. It is not sufficient to state that it is reviewing its records and will at some vague time in the future produce these documents.

### Request for Production 16

Please produce every document, report, study, analysis and/or conclusion upon which Defendant relied when making the decision to manufacture homes with a vapor barrier located on the living side of the walls for homes located in the hot and humid climate as defined by 24 CFR Part 3280.

**RESPONSE:** Fleetwood of Georgia objects to this request on the grounds that it is vague, overly broad, and unduly burdensome, and asks for a legal conclusion. Without waiving said objections, Fleetwood of Georgia states that it is reviewing its records and will produce documents responsive to this request, if any, at a mutually convenient time and place.

Although Defendant ultimately concludes that it will produce records responsive to this request, the request is not vague or unduly burdensome. If Defendant has documents which provide a basis by which they determined to use or not use a vapor barrier on living side of the walls it should be produced. Defendant's opinion or decision as to utilize a vapor barrier is not a "legal conclusion." Furthermore, Defendant has already been granted an extension. It is not sufficient to state that it is reviewing its records and will at some vague time in the future produce these documents.

### Request for Production 17

Please produce a true and correct copy of any and all documents, correspondence, policies, notes, memoranda, e-mail (internal or external) or any other written document of any manner (including any various draft versions) maintained by you or anyone in your control, relating to any manufactured home which did not have a vapor barrier as defined by 24 CFR 3280.504 located on the living side of the wall or walls.

**RESPONSE:** Fleetwood of Georgia objects to this request on the grounds that it is vague, overly broad, and unduly burdensome, inasmuch as Fleetwood of Georgia cannot be expected to search for, much less produce, such documents that may not even pertain to homes manufactured by Fleetwood of Georgia.

As stated previously, notice of the alleged problems in Plaintiff's complaint is an issue in several respects in this case.   If Defendant has noticed that homes were being built without a vapor barrier on the living side, this goes directly to the issue of Defendant's alleged excuse that HUD made them build the homes in this manner and also goes to credibility of Defendant.

**Request for Production 20**

Please produce a true and correct copy of any and all documents, correspondence, policies, notes, memoranda, e-mail (internal or external) or any other written document of any manner (including any various draft versions) maintained by you or anyone in your control, relating to any communications with (sent to or received from) HUD as it respects 24 CFR 3280.504 or 3280.103(b)(3).

**RESPONSE:** Fleetwood of Georgia objects to this request on the grounds that it is overly broad, unduly burdensome, vague, and not calculated to lead to the discovery of admissible evidence.

Defendant's comment on the waiver or communications with HUD (either sent to or received from) as it respects the specific sections 24 CFR 3280.504 or 3280.103(b)(3) is directly relevant to notice and feasibility.  For example, it Defendant communicated with HUD as it respects these sections, the information should have been saved in the Quality Assurance Manual or elsewhere.  It is not overly broad or vague and indeed is limited to the two sections listed – both of which are directly relevant to this case.

**Request for Production 22**

Please produce a true and correct copy of any and all documents, correspondence, policies, notes, memoranda, e-mail (internal or external) or any other written document of any manner (including any various draft versions) maintained by you or anyone in your control, relating to any opinion as to whether the placement of a vapor retarder on the living side of the walls in a hot and humid climate as defined by 24 CFR Part 3280 is in conformance with accepted engineering practices, demonstrates acceptable workmanship reflecting journeyman quality of work of the various trades or insures durable, livable and safe housing.

**RESPONSE:** Fleetwood of Georgia objects to this request on the grounds that it is overly broad and unduly burdensome. Without waiving said objections, Fleetwood of Georgia is reviewing its records to locate any such documents and will produce them, if any, at a mutually convenient time and place.

Although Defendant ultimately concludes that it will produce records responsive to this request, the request is not vague or unduly burdensome. If Defendant has documents which provide a basis by which they determined to use or not use a vapor barrier on living side of the walls and whether it is within accepted engineering practices to do so, it should be produced. Furthermore, Defendant has already been granted an extension. It is not sufficient to state that it is reviewing its records and will at some vague time in the future produce these documents.

**Request for Production 23**

Please produce a true and correct copy of any and all documents, correspondence, policies, notes, memoranda, e-mail (internal or external) or any other written document of any manner (including any various draft versions) maintained by you or anyone in your control, relating to any and all moisture issues or problems in the last eight years in homes located in the humid and fringe climates as defined by 24 CFR 3280 or relating to any comment or document you submitted to any governmental agency, DAPIA or anyone else (including but not limited to other manufacturers) regarding the Waiver for Condensation Control for Exterior Walls of Manufactured Homes Sited in Humid and Fringe Climates, Department of Housing and Urban Development 24 CFR Part 3280.

**RESPONSE:** Fleetwood of Georgia objects to this request on the grounds that it is vague and unintelligible, overly broad, and unduly burdensome, including but not limited to the fact that the request seeks information on "moisture issues" or "problems" that may have no relation whatsoever to the issues in this lawsuit. Without waiving said objections, Fleetwood of Georgia is reviewing its records to locate any such documents and will produce them, if any, at a mutually convenient time and place.

Whether Defendant has had numerous complaints with respect to moisture issues is directly relevant to Plaintiff's theory that Defendant knowingly sold defective homes. Defendant objects if Plaintiff does not limit the scope to "moisture" issues and objects if Plaintiff does not so limit the scope. As stated above, complaints should have been kept in the ordinary course

pursuant to federal law and any documents relating to comment by Defendant on the proposed

waiver is not unduly burdensome.

**Request for Production 28**

All documents reflecting any reports, investigations, opinions, inquiries, or facts relating to the compliance with any regulations, standards, statutes, laws, ordinances, and/or guidelines you contend relates, directly or indirectly, to the manufactured home in general and specifically as it relates to issues found in 24 C.F.R. § 3280.103(b)(3) or the choice of whether to use and where to place the vapor retarder as it relates to either the ceiling or walls as found in 24 CFR §3280.504(a) or (b).

**RESPONSE:** Fleetwood of Georgia objects to this request on the grounds that it is vague, overly broad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Defendant's investigation as to whether to use a vapor barrier or where to locate it is

relevant for several reasons, including whether Defendant was advised not to build homes in the

manner in they are being built in the Gulf Coast region.  It is not burdensome for Defendant to

produce any such documents and indeed they should by law have preserved such copies.

**Request for Production 29**

Please produce a true and correct copy of any and all documents, correspondence, policies, notes, memoranda, e-mail (internal or external) or any other written document of any manner (including any various draft versions) maintained by you or anyone in your control, relating to any DAPlA approved drawing(s) for the method of wall construction utilized.

**RESPONSE:** Fleetwood of Georgia objects to this request on the grounds that it is vague, overly broad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Federal law requires that Defendant have plans approved by a DAPlA and Plaintiff

requests all documents relating to the approved drawing(s) for the method of wall construction

utilized.  This is not unduly burdensome, vague and is directly relevant as Plaintiff should be

entitled to see what Defendant's DAPIA approved and whether Defendant has followed it.

**Request for Production 30**

Please produce a true and correct copy of any and all documents, correspondence, policies, notes, memoranda, e-mail (internal or external) or any other written document of any manner (including any various draft versions) maintained by you or anyone in your control, relating to any communication by and between the manufacturer or any of its entities and MHRA, MHI, HUD, BAIHP, DAPIAS, IPIAS, current and past, COOSA, or any SAA, or any vendors from which the manufacturer purchases vinyl covered gypsum panels (VOG) or any other party relative to moisture problems in homes sited in Humid and Fringe Climates, together with any and all comments regarding the waiver, both final and interim.

**RESPONSE:** Fleetwood of Georgia objects to this request on the grounds that it is vague, overly broad, and unduly burdensome, unlimited in time or scope, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections, Fleetwood of Georgia is reviewing its records to locate any documents that might potentially be responsive to this request, and which address vinyl on gypsum walls and/or negative pressure issues, and will produce them, if any, at a mutually convenient time and place.

Although Defendant ultimately concludes that it will produce records responsive to this request, the request is not vague or unduly burdensome. Furthermore, Defendant has already been granted an extension. It is not sufficient to state that it is reviewing its records and will at some vague time in the future produce these documents.

**Request for Production 31**

If no correspondence exists by and between the producer of vinyl covered wallboard and you, please produce all documents which demonstrate who produces the VOG for each facility shipping into the Hot and Humid Climate area, and provide the Material Safety Data Sheets for each producer, along with their installation instructions, warranty, and any other documents relating thereto.

**RESPONSE:** Fleetwood of Georgia objects to this request as vague, overly broad, and unduly burdensome, in that it requests Fleetwood of Georgia to identify and produce documents "which demonstrate" who produces VOG. Moreover, the request seeks information on other factories that did not produce the plaintiff's home. Without waiving said objections, Fleetwood of Georgia is searching its records and will produce documents potentially responsive to this request, if any, at a mutually convenient time and place.

Although Defendant ultimately concludes that it will produce records responsive to this request, the request is not vague or unduly burdensome. Furthermore, Defendant has already been granted an extension. It is not sufficient to state that it is reviewing its records and will at some vague time in the future produce these documents. Further, Plaintiff has requested "installation instructions" and "warranty" information, not just the identity of the manufacturer.

### b.    FLEETWOOD ENTERPRISES, INC.

FLEETWOOD ENTERPRISES, INC., (hereinafter "Fleetwood"), one of the Defendants in the above civil action, provided the following responses to the Plaintiff's Interrogatories and Request for Production of Documents:

Fleetwood Enterprises was served with the identical discovery as Fleetwood Homes of Georgia, Inc. Fleetwood Enterprises, Inc. provided identical answers (other than adding here and there a sentence that Fleetwood Enterprises, Inc. did not manufacture the home). As such, Plaintiff's incorporate the previous specifically delineated reasons to compel Fleetwood Enterprises, Inc. as each request/interrogatory should be compelled for the same reasons. Plaintiff will thus not restate them here.


/s/ C. Lance Gould
C. LANCE GOULD (ASB-0913-G66C)
Attorney for Plaintiff


**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
Attorneys at Law
Post Office Box 4160
Montgomery, AL  36103-4160
(334) 269-2343
(334) 954-7555 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served the foregoing document upon all Counsel of record <u>as listed below</u> by placing a copy of same in the United States Mail, first class, postage prepaid on this the 17th day of August, 2007.

<u>/s/ C. Lance Gould</u>
OF COUNSEL

James F. Crosby
Hendrick S. Snow,
CROSBY SAAB, LLC
6404 Hillcrest Park Court
Mobile, Alabama 36695

Winston Edwards
David Hilyer
CRADDOCK, RENEKER & DAVIS, LLP
4142 Carmichael Road, Suite C
Montgomery, AL  36106