IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES PERRY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 2:06-cv-502-MEF |
| ) | (WO) |
| FLEETWOOD ENTERPRISES, INC., ) | |
| *et al.,* ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

James Perry (hereinafter "Plaintiff") brings this action against Fleetwood Enterprises, Inc. and Fleetwood Homes of Georgia, Inc. (hereinafter collectively "Defendants").[1] Plaintiff alleges violation of the Magnuson Moss Warranty Act, breaches of various warranties, negligence, wantonness, and violation of the Alabama Extended Manufacturers Liability Doctrine. This cause is presently before the Court on Defendants' Motion to Dismiss (Doc. # 4). Therein, Defendants argue that Plaintiff's state law claims are preempted by the National Manufactured Housing Construction and Safety Standards Act of 1974, 42 U.S.C. §§ 5401 *et seq.* (hereinafter "the Manufactured Housing Act" or "the Act"). The Court has considered the Complaint and the arguments in support of and in

---

[1] Plaintiff also names a number of fictitious defendants. Federal courts do not allow fictitious party practice. *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997) ("[F]ictitious party practice is not permitted in federal court."). Therefore, the fictitious defendants are due to be dismissed. *See, e.g.*, *Wiggins v. Risk Enterprise Mgmt. Ltd.*, 14 F. Supp. 2d 1279, 1279 n.1 (M.D. Ala. 1998) (DeMent, J.) (dismissing *sua sponte* fictitious defendants).

opposition to the Motion. For the reasons set forth in this Memorandum Opinion and Order, Defendants' Motion is due to be GRANTED IN PART and DENIED IN PART.

## I. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. Prior to the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955 (2007), a motion to dismiss could only be granted if a plaintiff could prove "no set of facts . . . which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986). Now, in order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Plaintiff's "[f]actual allegations must be enough to raise a right to relief above a speculative level on the assumption that the allegations in the complaint are true." *Id*. at 1965. It is not sufficient that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 1968 (internal quotation and alteration omitted). The court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the

plaintiff. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

### III.  FACTUAL AND PROCEDURAL BACKGROUND

Defendant Fleetwood Homes (hereinafter "Fleetwood Homes") manufactures and sells manufactured homes.  Fleetwood Enterprises (hereinafter "Fleetwood Enterprises") is the parent corporation or alter ego of Fleetwood Homes.  On or about May 2, 2002, Plaintiff purchased a manufactured home made by Fleetwood Homes.  Defendants made a written express warranty to Plaintiff as part of the purchase of the home.  In addition, Defendants warranted that any defects in the materials or workmanship of the home would be repaired or remedied at no cost to Plaintiff if Defendant received notice within the warranty period.  Plaintiff alleges that the home failed in its intended purpose.  He further alleges that Fleetwood Homes failed to repair the home, despite his notice of its deficiencies, and that the home as a result continues to deteriorate structurally.  Plaintiff alleges that he has given Defendants notice of his breach of warranty claim prior to bringing this suit, pursuant to § 7-2-607(3) of the Alabama Code.

Plaintiff filed the Complaint on May 1, 2006 in the Circuit Court of Bullock County (Doc. # 1).  In his Complaint, he alleges causes of action under the following theories: the Magnuson Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. (Count I); breach of express

warranty (Count II); breach of implied warranty of merchantability (Count III); breach of fitness for particular purpose (Count IV); breach of warranty of habitability (Count V); negligence (Count VI); wantonness (Count VII); and the Alabama Extended Manufacturers Liability Doctrine (Count VIII).

On June 2, 2006, Defendants removed the action to this Court (Doc. # 1). Defendants filed a Motion to Dismiss (Doc. # 4) on July 5, 2006.

## IV. DISCUSSION

Defendants contend that Plaintiff's state law claims are preempted by the Manufactured Housing Act. "Congress's intent to preempt state law may be explicitly stated in the language of a federal statute or implicitly contained in the structure and purpose of the statute." *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1122 (11th Cir. 2004). There are three types of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption. *Id.* The second and third types are collectively referred to as "implied preemption." Defendants argue that Plaintiff's state law claims are both expressly and impliedly preempted.

The Court's preemption analysis "start[s] with the assumption that the historic police powers of the states are not superseded by federal law unless preemption is the clear and manifest purpose of Congress." *Nat'l Ass'n of State Utility Consumer Advocates v. FCC*, 457 F.3d 1238, 1252 (11th Cir. 2006); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("[W]e have long presumed that Congress does not cavalierly pre-empt state-law

causes of action."). "Therefore, [t]he purpose of Congress is the ultimate touchstone of preemption analysis." *Cliff*, 363 F.3d at 1122 (alteration and internal quotation omitted).

### A. *Express Preemption*

Defendants argue that Plaintiff's state law claims are barred by express preemption, whereby "Congress can define explicitly the extent to which its enactments pre-empt state law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990). Express preemption may be found in the language of the statute, its legislative history, or the regulations promulgated pursuant to the statute. *Howard v. Uniroyal, Inc.*, 719 F.2d 1552, 1556 (11th Cir. 1983). Congress must express a clear intent to preempt state law. *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368 (U.S. 1986). "Federal preemption under [subsection § 5403(d) of the Manufactured Housing Act] shall be broadly and liberally construed to ensure that disparate State or local requirements or standards do not affect the uniformity and comprehensiveness of the standards promulgated under this section nor the Federal superintendence of the manufactured housing industry as established by this chapter." 42 U.S.C. § 5403(d).

Defendants contend that Congress expressly preempted Plaintiff's claims when it provided in the Act that the "manufactured home construction and safety standards established by the Secretary under this section shall include preemptive energy conservation standards in accordance with this subsection." 42 U.S.C. § 5403(g)(1). Defendants also point to the fact that the regulations specifically set out "the requirements for condensation control, air infiltration, thermal insulation and certification for heating and comfort cooling."

5

24 C.F.R. § 3280.501.

In response, Plaintiff points to the saving clause, which provides, "Compliance with any Federal manufactured home construction or safety standard issued under this chapter does not exempt any person from any liability under common law." 42 U.S.C. § 5409(c). Plaintiff argues that the saving clause exempts this action from preemption.

The statutory language instructs the Secretary to include "preemptive energy conservation standards." 42 U.S.C. § 5403(g)(1). The preemptive effect of the Act is set forth in subsection (d) of the same section:

> Whenever a Federal manufactured home construction and safety standard established under this chapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding the construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.

42 U.S.C. § 5403(d). *See Ga. Manufactured Hous. Ass'n, Inc. v. Spalding County*, 148 F.3d 1304, 1308-09 (11th Cir. 1998) (noting that Congress defined the preemptive effect of the Act in § 5403(d)).

The United States Supreme Court has held that nearly identical language in another statute does not expressly preempt state law tort claims. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 868 (2000). Further, several courts have held that identical language in the Manufactured Housing Act does not expressly preempt state law products liability claims.

*See, e.g., Choate v. Champion Home Builders Co.*, 222 F.3d 788, 793-94 (10th Cir. 2000); *Richard v. Fleetwood Enters., Inc.*, 4 F. Supp. 2d 650, 657 (E.D. Tex. 1998) ("The Manufactured Housing Act does not explicitly preempt state causes of action."). In addition, the regulations promulgated under the Act provide for the maintenance of state law claims. *See, e.g.*, 24 C.F.R. § 3282.402(a) ("Nothing in this subpart or in these regulations shall limit the rights of the purchaser under any contract or applicable law.").

Defendants argue that the preemption provision here should be read broadly and that such a reading would preempt Plaintiff's state law claims. In *Geier v. Am. Honda Motor Co.*, the Supreme Court addressed this issue in the context of a nearly identical preemption provision and saving clause in the National Traffic and Motor Vehicle Safety Act.[2] The Court explained:

> [A] reading of the express pre-emption provision that excludes common-law tort actions gives actual meaning to the saving clause's literal language, while leaving adequate room for state tort law to operate-for example, where federal law creates only a floor, *i.e.,* a minimum safety standard. Without the saving clause, a broad reading of the express pre-emption provision arguably might pre-empt those actions, for, as we have just mentioned, it is possible to read the pre-emption provision, standing alone, as applying to standards imposed in common-law tort actions, as well as standards contained in state

---

[2] The saving clause at issue in *Geier* is nearly identical to that in the Manufactured Housing Act: "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." *See* 49 U.S.C. § 30103(e); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 895 & n.11 (2000) (Stevens, J., dissenting) (quoting the saving clause and noting that it is now codified in 49 U.S.C. § 30103(e)).

7

> legislation or regulations. And if so, it would pre-empt all nonidentical state standards established in tort actions covering the same aspect of performance as an applicable federal standard, even if the federal standard merely established a minimum standard.

*Geier*, 529 U.S. at 868 (internal citation omitted). The presence of the saving clause, however, did not permit a broad reading. The court stated that it did not find any convincing evidence of congressional intent to preempt common-law tort actions, and therefore, a broad reading of the preemption provision could not be correct. *Id*. Given the presence of the saving clause, the court stated that the preemption clause must be read narrowly. *Id*.

Defendants argue that the saving clause analysis set forth above is only applicable where the regulations set forth in the statute are minimum standards intended to provide a "floor," or minimum safety standard. They contend that the specifications in the Act are mandatory requirements, not minimum standards. Defendants point out that the Act states that the manufactured home construction and safety standards are to "meet high standards of protection," *see* 42 U.S.C. § 5403(a)(1)(A)(ii), and the relevant regulation is one of the "requirements for condensation control, air infiltration, thermal insulation and certification for heating and cooling," *see* 24 C.F.R. § 3280.501.

The Court does not agree that the saving clause only saves those actions challenging regulations intended to provide a minimum safety standard. In *Geier*, the Court listed regulations intended to provide a minimum safety standard as an example of a regulation that might fall within the savings clause. *Geier* did not state that state law actions are barred if

8

the federal regulation goes beyond providing a minimum standard. In fact, the opinion suggests that the saving clause exempts tort actions generally. *See, e.g., Geier*, 529 U.S. at 868 ("The language of the pre-emption provision permits a narrow reading that excludes common-law actions."); *id*. at 869 ("We have just said that the saving clause *at least* removes tort actions from the scope of the express pre-emption clause."). *But see id.* at 870 ("[T]he saving provision still makes clear that the express pre-emption provision does not of its own force pre-empt common-law tort actions. And it thereby preserves those actions that seek to establish greater safety than the minimum safety achieved by a federal regulation intended to provide a floor.").

This view is supported not only by the language in *Geier*, but also by its analysis. The Court stated that the regulation at issue was not a minimum standard; rather, the regulation provided manufacturers of airbags with a "range of choices among different passive restraint devices." *Id.* at 874-75. *See also Griffith v. Gen. Motors Corp.*, 303 F.3d 1276, 1281 (11th Cir. 2002) ("In *Geier*, the Court found that the rule-making history of [the regulation at issue] makes clear that [the Department of Transportation] saw it not merely as a minimum standard, but as a comprehensive regulatory scheme."). If the saving clause only excluded from operation of the express exemption clause actions based on those regulations intended to provide a floor, the Court would have found express preemption. Instead, the Court found that the action was removed from the scope of the express exemption clause, and it concluded that the action was not expressly preempted. *Id.* at 868. The presence of a saving

clause therefore saves more than only actions based upon regulations intended to provide a minimum safety standard.

As Defendants point out, the statute also states that the standards promulgated under the Act "shall include preemptive energy conservation standards in accordance with this subsection." *See* 42 U.S.C. § 5403(g)(2). Given the presence of the saving clause, the Court is not persuaded that Congress intended to preempt common law actions rather than state statutes or regulations. *See Geier*, 529 U.S. at 868 ("We have found no convincing indication that Congress wanted to pre-empt, not only state statutes and regulations, but also common-law tort actions, in such circumstances."). In any case, both the preemption clause and the saving clause are nearly identical to those that were found not to preempt common law actions in *Geier* and *Choate*. The Court concludes that the doctrine of express preemption does not bar Plaintiff's claims. Accordingly, Defendants' Motion is due to be DENIED on the basis of express preemption.

### B. Implied Preemption

Defendants also contend that Plaintiff's state law claims are barred by both types of implied preemption. The presence of an express preemption provision does not foreclose an implied preemption analysis. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287-88 (1995). The Court turns first to field preemption, which occurs when "federal regulation in a legislative field is so pervasive that we can reasonably infer that Congress left no room for the states to supplement it." *Cliff*, 363 F.3d at 1122.

The presence of a saving clause suggests that Congress did not intend to occupy the field.[3] The decisions the Court has found addressing field preemption with respect to common law actions have concluded that federal regulation under the Act is not sufficiently pervasive to occupy the field. *See Choate*, 222 F.3d at 795 ("[T]he Manufactured Housing Act does not support [the] assertion" that "Congress intended for the Federal Government to occupy the field of construction and safety of manufactured homes exclusively . . . ."); *Richard*, 4 F. Supp. 2d at 657 ("[T]here is no clear or manifest congressional intent for the federal regulation of the safety and sale of manufactured housing to completely occupy the field."). The Court agrees.

As Defendants note, Congress has amended the Manufactured Housing Act since these cases were decided. Defendants note that the 2000 amendments to the Act "interjected a consensus-based process for the proposal, revision, and implementation of performance standards." (Doc. # 4 at 7). However, these amendments only changed the process of promulgating the standards, because before the amendments the Secretary was to establish such standards "after consultation with the Consumer Product Safety Commission." *See* 42 U.S.C. § 5403, Historical and Statutory Notes, Amendments. It is unclear why changing the

---

[3] While *Geier* and *Choate* held that the presence of a saving clause does not foreclose the operation of conflict preemption principles, neither addressed the effect of a saving clause on field preemption. *See Geier*, 529 U.S. at 869 (addressing the effect of the presence of a saving clause on conflict preemption but not field preemption); *Choate*, 222 F.3d at 794-95 (noting that the saving clause did not foreclose the question of conflict preemption and that the defendant did not raise the issue of field preemption).

process of promulgating performance standards would make the resulting regulations more pervasive. The Court concludes that even considering the effect of the amendments, Congress did not intend to occupy the field.

Defendants also assert that Plaintiff's state law claims are barred by conflict preemption.[4] "Conflict preemption exists where state law actually conflicts with federal law, making it impossible to comply with both, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 768 (11th Cir. 1998) (internal quotation marks omitted). The Act's implementing regulations specify that the test for determining whether the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress is "whether the State rule can be enforced or the action taken without impairing the Federal superintendence of the manufactured home industry as established by the Act." 24 C.F.R. § 3282.11(d).

At least some of Plaintiff's claims are based on Defendants' selection of an option permitted by § 3280.504(b). As Plaintiff states in his brief, "Plaintiff has alleged that these Defendants have knowingly chosen to build homes to a known defective optional standard (when other reasonable options existed) under 24 C.F.R. § 3280.504." (Doc. # 6 at 1-2.)

Rather than provide a minimum standard, Section 3280.504(b), like the regulation at

---

[4] As with an express preemption provision, the presence of a saving clause does not foreclose the operation of conflict preemption. *See Geier*, 529 U.S. at 869.

issue in *Geier*, provides for a range of authorized options for exterior wall construction. *See* 24 C.F.R. § 3280.504(b). The regulations lay out "the requirements for condensation control, air infiltration, thermal insulation and certification for heating and comfort cooling." 24 C.F.R. § 3280.501. The language does not suggest that the regulation sets forth minimum standards. They are also intended to "meet high standards of protection." *See* 42 U.S.C. § 5403(a)(1)(A)(ii). Courts have suggested that regulations providing a range of options do not set forth minimum standards. *See Stone ex rel. Estate of Stone v. Frontier Airlines, Inc.*, 256 F. Supp. 2d 28, 44 (D. Mass. 2002). The Court concludes that § 3280.504(b) does not set forth a minimum standard. Further, the one case of which the Court is aware to have addressed this issue found that the plaintiff's claims were barred by conflict preemption because they would penalize the manufacturer for choosing a federally authorized option. *See Guidroz v. Champion Enters., Inc.*, No. 05-1148 (W.D. La. Jan. 26, 2007). The Court agrees and concludes that Plaintiff may not penalize Defendant for choosing an option permitted by § 3280.504(b).

Plaintiff argues, looking both to case law and the structure of the regulations themselves, that the regulations at issue set forth are performance-based. In other words, the manufacturer is given several options to meet a performance-based requirement. Therefore, Plaintiff argues, the regulations set forth minimum standards. The Court disagrees. The regulation at issue in *Geier* also set a performance requirement. *See Geier*, 529 U.S. at 878 ("[The regulation at issue] set[] a performance requirement for passive restraint devices and

13

allow[ed] manufacturers to choose among different passive restraint mechanisms, such as airbags, automatic belts, or other passive restraint technologies to satisfy that requirement."). The *Geier* Court noted that the manufacturers were required to meet a performance requirement by choosing from a range of options. *See id.* at 878-79. Nonetheless, the plaintiff's claims were preempted because they penalized the manufacturer for choosing an option provided by the regulations. *See id.* at 881. Even if the regulations set forth performance requirements or a performance standard, the Court cannot agree that the regulations provide a minimum standard. Maintenance of Plaintiff's state court claims would "impair[] the Federal superintendence of the manufactured home industry as established by the Act." 24 C.F.R. § 3282.11(d). Defendants' motion to dismiss Plaintiff's state law claims is therefore due to be GRANTED to the extent that those claims seek to penalize Defendants for their choice of an option available under 24 C.F.R. § 3280.504(b).

## V. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

1. Defendants' Motion to Dismiss (Doc. # 4) is GRANTED IN PART and DENIED IN PART.

2. Plaintiff's state law claims are DISMISSED with prejudice to the extent that those claims seek to penalize Defendants for their choice of an option available under 24 C.F.R. § 3280.504(b). Any of Plaintiff's other state law claims remain pending.

3. All claims against the fictitious defendants are DISMISSED.

DONE this 28th day of September, 2007.

                                              /s/ Mark E. Fuller
                                     CHIEF UNITED STATES DISTRICT JUDGE